# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Wing Enterprises, Inc. d/b/a
Little Giant Ladder Systems,

        Plaintiff,

v.

Tricam Industries, Inc.,

        Defendant.

Case No. 17-cv-1769 (ECT/ECW)

**ORDER**

---

## I.    <u>INTRODUCTION</u>

This matter is before the Court on Defendant Tricam Industries, Inc.'s ("Tricam")
Motion to Strike Untimely Supplemental Interrogatory Responses (Dkt. No. 109)
("Motion"). Plaintiff Wing Enterprises, Inc. d/b/a Little Giant Ladder Systems ("Wing")
alleges that Tricam has engaged in false advertising in connection with its sales of multi-
position ladders sold under the name "Gorilla Ladders." (Dkt. No. 1 ¶¶ 18-28, 36-48.)

Tricam served interrogatories asking Wing to "[i]dentify with specificity the
alleged misleading or false statement(s) made by Tricam." (Dkt. 113-25.) In its first
responses served on December 1, 2017, Wing responded:

- Tricam's false statements include but are not limited to Tricam's
  representation to [and through] The Home Depot that its accused ladders
  are ANSI compliant;

- As a direct result of Tricam's representations, The Home Depot's web
  pages for the accused products represent that the accused products are
  ANSI compliant; and

- Tricam also represents to The Home Depot [and the public] that its accused ladder products conform to ANSI 14.2 through the labeling of its products.[1]

(Dkt. No. 116 at 2-4.)  The relevant portion of the label at issue is reproduced below.



(*Id.*; Dkt. No. 116 ¶ 15.)  Wing's responses did not mention OSHA.[2]  (*See generally* Dkt. No. 116.)

On September 26, 2018, almost two months after the close of fact discovery, Wing served its first (and only) supplemental responses to those interrogatories.  (Dkt. No. 113-2.)  In them, Wing asserted:

- As Wing has contended throughout this case, the statement "MANUFACTURER CERTIFIES CONFORMANCE TO OSHA ANSI A 14.2 CODE FOR METAL LADDERS" found on the label of every MPX ladder (reproduced below) is false because the MPX ladders do not comply with all aspects of the ANSI A14.2 standard, which is the basis for Tricam asserting that the MPX ladders are ANSI and OSHA compliant;

- As Wing has contended throughout this case, the statement found on The Home Depot website listing "ANSI Certified, OSHA Compliant" as certifications for the MPX ladders is false because the MPX ladders do not comply with all aspects of

---

[1]    "ANSI" refers to the American National Standards Institute.  (Dkt. No. 1 ¶ 19 n.1.)

[2]    "OSHA" refers to the "Occupational Safety and Health Administration," whose regulations are set forth in Title 29 of the Code of Federal Regulations.

the ANSI A14.2 standard, which is the basis for Tricam asserting that the MPX ladders are ANSI and OSHA compliant; and

- As Wing has contended throughout this case, the statement "CERTIFICATIONS: ANSI A14.2, OSHA" on Tricam's Gorilla Ladders website is false because the MPX ladders do not comply with all aspects of the ANSI A14.2 standard, which is the basis for Tricam asserting that the MPX ladders are ANSI and OSHA compliant.

(Dkt. No. 113-2.)

Tricam brought this Motion on the grounds that Wing has untimely asserted a "new basis for its false advertising and deceptive trade practices claims" in those supplemental responses, namely, that "that Tricam also falsely advertises by stating that its accused products conform to OSHA."[3] (Dkt. No. 111 at 1, 5.) Wing responds that "[t]he basis for Wing's false advertising claims is, and has always been, that Tricam's **collective representation of OSHA/ANSI compliance** is false because the MPX ladders do not meet a mandatory requirement of the ANSI A14.2 standard, specifically section 6.7.5." (Dkt. No. 130 at 3 (emphasis added).) In other words, Wing asserts that not only is its contention that Tricam's representation of OSHA conformance not untimely, it is not even new.

Accordingly, the Court has conducted an exhaustive review of the record, including the pleadings, Wing's Rule 26 disclosures and discovery responses, Wing's deposition testimony, and Wing's expert reports, to discern whether Wing contended that

---

[3] Neither party indicated there was any meaningful difference between "compliance," "conformance," and "certification" for purposes of this motion, so the Court uses the terms interchangeably in this Order.

Tricam's representations of OSHA compliance were false or misleading ("OSHA contention") before the September 26 supplementation that gave rise to this Motion. For the reasons stated below, the Court concludes that (1) Wing did not disclose its OSHA contention before the September 26 supplementation, (2) Wing's September 26 supplementation to disclose its OSHA contention was untimely, and (3) Wing's failure to timely disclose its OSHA contention was not substantially justified or harmless. Accordingly, the Court grants Tricam's motion to strike the September 26 supplemental interrogatory responses.

## II.     BACKGROUND

### A.     The Pleadings

Wing brought this action against Tricam on May 26, 2017. (Dkt. No. 1.) Wing asserted claims for false advertising, deceptive trade practices, and patent infringement with regard to Tricam's Gorilla Ladders. (*Id.*) In July 2018, the parties settled the patent infringement claims, leaving only the deceptive trade practices and false advertising claims at issue. (*See* Dkt. Nos. 74, 82.)

The Complaint, under the heading "Tricam's False Advertising," sets forth Wing's allegations supporting those claims. (*See* Dkt. No. 1 ¶¶ 18-28.) The Complaint alleges that Tricam markets and sells the Gorilla Ladders through The Home Depot. (*Id.* ¶¶ 18-19.) It alleges that Tricam "expressly represents to The Home Depot and to the consuming public that the Infringing Gorilla Ladders are 'ANSI certified' and 'OSHA compliant.'" (*Id.* ¶ 19.) In particular, the Gorilla Ladders allegedly "do not have a step

surface (as defined in the ANSI ASC A14 standards) that complies with section 6.7.5 of the ANSI A14 ladder safety standards."[4]  (*Id.* ¶ 22.)

The Complaint then alleges "Tricam's representation that the Infringing Gorilla Ladders are 'ANSI certified' is false."  (*Id.* ¶¶ 20-23.)  The Complaint alleges the "misrepresentation" that the Gorilla Ladders are "ANSI compliant" is "important and material," "deceives and misleads consumers and The Home Depot," and is "made in connection with marketing" the Gorilla Ladders.  (*Id.* ¶¶ 24-26.)  The Complaint further alleges Wing has been harmed due to Tricam's alleged misrepresentation because Tricam has marketed and sold the Gorilla Ladders "as ANSI certified ladders" and because the Gorilla Ladders do not "meet[] the ANSI standards" but are marketed as "compliant with those standards."  (*Id.* ¶¶ 27-28.)

In its false advertising and deceptive trade practices counts, the Complaint refers to "Tricam's false statements about the Infringing Gorilla Ladders being ANSI certified."  (*Id.* ¶¶ 38, 45.)  In the Prayer for Relief, Wing seeks an injunction preventing Tricam "from falsely representing that the Infringing Gorilla Ladders or any other ladder products comply with the ANSI safety standards."  (*Id.* at 10.)  The Complaint does not include any allegation that Tricam's statement that the Gorilla Ladders are "OSHA

---

[4]      Section 6.7.5 states: "Trapezoidal, D-shaped or equivalent, square or rectangular rungs shall have a step surface of not less than 1 inch, either flat or along a segment of arc of 3 inches or greater radius."  (Dkt. No. 119 at 9.)  According to Wing, the Gorilla Ladders' trapezoidal rungs do not meet the 1-inch requirement.  (*Id.* at 9-10.)

compliant" is a misrepresentation or is false, nor does it request any relief with respect to the OSHA language.

On June 21, 2017, Tricam answered and asserted counterclaims seeking declarations of non-infringement and invalidity of the asserted patent. (Dkt. No. 9.) On June 30, 2017, Tricam filed an Amended Answer and Counterclaims adding general allegations responsive to Wing's false advertising allegations, including a description of a lawsuit filed by Wing against Tricam in Utah alleging false advertising. (Dkt. No. 14 ¶¶ 4-31.) In the Utah lawsuit, Wing did not identify the "OSHA compliant" language as false or misleading. *Wing Enters., Inc. v. Tricam Indus., Inc.*, No. 2:17-cv-00244-TS, Dkt. No. 2 (D. Utah Mar. 30, 2017). The Utah action was dismissed without prejudice. *Id.* at Dkt. No. 7 (D. Utah June 5, 2017). Tricam did not reference OSHA in its Answer or Amended Answer. (*See* Dkt. Nos. 9, 14.)

Wing, in its Reply to the Amended Answer, "affirmatively state[d] that Tricam itself publicly certifies that its ladders are compliant with ANSI standards with the label shown below" and reproduced the following image of the label:



(Dkt. No. 16 ¶ 15.)  As shown above, the label includes an oval stating

"MANUFACTURER CERTIFIES" on the top part and "METAL LADDERS" on the

bottom part where the oval contains the language

CONFORMANCE
TO
OSHA
ANSI A 14.2 CODE
FOR

in the center.  (*Id.*)  Although the word "OSHA" is in larger font than the font used for

the words "CONFORMANCE TO" and "ANSI A 14.2 CODE FOR" (*see id.*), Wing did

not reference OHSA in its Reply.  Read together, the label states "MANUFACTURER

CERTIFIES CONFORMANCE TO OSHA ANSI A 14.2 CODE FOR METAL

LADDERS."

**B.     Written Discovery**

Wing served its initial disclosures on August 22, 2017.  (Dkt. No. 113-3.)  Wing

identified "ANSI standards materials related to ladder products" as documents relevant to

the asserted claims and defenses.  (*Id.*, Ex. 5 at 4.)  Wing also identified representatives

from Wing and The Home Depot as knowledgeable about "industry standards including

the ANSI standards" and "the ANSI-ASC A14.2 standard," professors Dr. Daniel

Bloswick and Dr. George Kyanka as knowledgeable about "industry standards and

practices including ANSI standards," and the director of Louisville Ladder, Inc. as

knowledgeable about "Louisville Ladder's interpretation of the ANSI standard."  (Dkt.

No. 113-5, Ex. 7 at 2-4.)  Wing did not mention OSHA in its initial disclosures or

supplemental initial disclosures.  (*See generally id.*, Exs. 5-8.)

Tricam served Interrogatory Nos. 18 and 19 on Wing seeking identification "with

specificity" of "the alleged misleading or false statement(s)":

> **Interrogatory No. 18:** Identify with specificity the alleged misleading or
> false statement(s) made by Tricam to The Home Depot that provide the basis
> for Wing's false advertising and deceptive trade practices causes of action,
> including what Tricam is purported to have said, when the statement(s) were
> made, where the statement(s) can be found, and what is misleading or false
> about the statement(s).
>
> **Interrogatory No. 19:** Identify with specificity the alleged misleading or
> false statement(s) made by Tricam to customers other than The Home Depot
> that provide the basis for Wing's false advertising and deceptive trade
> practices causes of action, including what Tricam is purported to have said,
> when the statement(s) were made, where the statement(s) can be found, and
> what is misleading or false about the statement(s).

(Dkt. No. 116.)  In its first set of responses to Interrogatories Nos. 18 and 19, Wing

referred to "ANSI" in 11 separate instances, including contending that Tricam's

representations that the Gorilla Ladders "are ANSI compliant" and "comply with the requirements of ANSI 14.2" were false statements. (*Id.*) Wing did not identify a "collective representation of OSHA/ANSI compliance" or a "collective OSHA/ANSI" statement of any kind as being false. (*Id.*) In fact, Wing did not mention OSHA in its first responses. Wing did not supplement its responses to Interrogatory Nos. 18 and 19 to allege that "Tricam's collective representation of OSHA/ANSI compliance is false" until September 26, 2018, almost two months after fact discovery closed on July 31, 2018. (*See* Dkt. Nos. 23, 73, 113-2.)

Wing served interrogatories on Tricam seeking identification of "all representations . . . that any Tricam ladder complies with ANSI standards," including the following interrogatory:

> **Interrogatory No. 15:** Identify with specificity all representations made by, or on behalf of, Tricam to any Tricam customers, other than the Home Depot, that any Tricam ladder complies with ANSI standards, including but not limited to exactly what Tricam said, when the statements were made, and where the statements were made.

(Dkt. No. 113-12, Ex. 28 at 4.) Tricam responded, in part, that its website had the following statement: "CERTIFICATIONS: ANSI A14.2, OSHA" and that the ladders had the label shown in paragraph 15 of Wing's Reply. (*Id.* at 4-5.) Wing did not seek identification of representations that any Tricam ladder complied with OSHA regulations. (*See id.*)

Tricam served the following Requests for Admission on Wing:

> **REQUEST NO. 21**: Admit that Wing contends the label depicted in Exhibit A constitutes a false statement by Tricam to its customers.

**REQUEST NO. 22**: Admit that Wing contends the label depicted in Exhibit A constitutes a false statement by Tricam to The Home Depot.

. . .

**REQUEST NO. 25**: Admit that Wing contends the label depicted in Exhibit A constitutes a misleading statement by Tricam to its customers.

**REQUEST NO. 26**: Admit that Wing contends the label depicted in Exhibit A constitutes a misleading statement by Tricam to The Home Depot.

(Dkt. No. 113-8, Ex. 11 at 2.)  The label depicted in Exhibit A to the Requests for

Admission is reproduced below.



(Dkt. No. 113-7, Ex. 10, Ex. A.)  As in the label shown in Wing's Reply to the Amended

Answer, the label in Exhibit A contains the same "MANUFACTURER CERTIFIES" and

"METAL LADDERS" oval with the language:

CONFORMANCE
TO
OSHA
ANSI A 14.2 CODE
FOR

in the center, where the word "OSHA" is in larger font than the font used for the words "CONFORMANCE TO" and "ANSI A 14.2 CODE FOR." (*Id.*; Dkt. No. 15 ¶ 16.)

In response to these Requests, Wing objected "to Tricam's vague use of 'the label'" and responded:

> **Wing admits that Wing contends that any representation by Tricam that the accused Tricam ladders conform to ANSI 14.2, and more specifically, with ANSI 14.2 section 6.7.5, constitutes a false and/or misleading statement**, including Tricam's use of the label depicted in Exhibit A on the accused Tricam ladders. Subject to and without waiving the foregoing objections, **Wing otherwise denies this request.**

(Dkt. No. 113-8, Ex. 11 at 1-2 (emphases added).) Wing did not identify the OSHA language on the label shown in Exhibit A as false or misleading.

## C.     Wing's Deposition Testimony

Tricam deposed several Wing employees regarding Wing's false advertising and deceptive trade practices contentions. Newell Ryan Moss, Wing's CEO, testified:

> **Q.** And just so I understand, what's your understanding of the basis for Wing's assertion that Tricam has engaged in false advertising and deceptive trade practices? Is it that they say they meet ANSI?
>
> **MR. MILLER:** Objection to the form to the extent it calls for a legal conclusion.
>
> **THE WITNESS:** Can you just restate that one so I fully understand what you're asking.
>
> **Q. (BY MR. CHADWICK)** Yeah, sure. I just want your understanding of what the basis for the false advertising and deceptive trade practices claims is.
>
> **A.** Okay.
>
> **MR. MILLER:** Same objection. Calls for speculation.

11

**THE WITNESS:** My -- my understanding for what that is is that they are advertising that it meets ANSI, or is ANSI certified, that they're disclosing and selling under the pretense that this product meets ANSI, and it does not.

(Dkt. No. 114 at 4-5, Tr. at 97:11-98:2.)

Later in Mr. Moss's deposition, the following exchange occurred:

**Q.** All right.  We talked about the ANSI certified statement on the Home Depot web page, and that's one of the problems that Little Giant has with regard to this lawsuit, that it's saying Tricam products are ANSI certified; correct?

**A.** Yes.

**Q.** And one of the other problems that Little Giant has is the label on the Little Giant – I'm sorry. Let me start over.

Little Giant also takes exception with the label on the Tricam product as well?

**A.** The portion of the label that says that it is ANSI 11 compliant, yes.

**Q.** Yeah. And I think -- have you seen that label?

**A.** I have. I have seen it.

**Q.** Do you remember what it says?

**A.** Not the specific verbiage.  I'm sure we could pull up a picture.

**Q.** Let's see if I've got one.  I just wanna make sure We're talking about the same thing here.

(*Id.* at 10-11, Tr. at 169:24-165:18.)

After being shown the label, Mr. Moss further testified:

> **Q.** All right.  And does Little Giant believe or
> contend that this label deceived the Home Depot in its
> decision to purchase ladders, articulated ladders from
> Tricam?
>
> **MR. MILLER:** Objection.  Lack of foundation, calls for
> speculation.
>
> **THE WITNESS:** I guess in certain respects, yes.  Sure.
>
> **Q. (BY MR. CHADWICK)** And can you explain why you say
> that in certain respects, yes?
>
> **A.** Well, if they -- if they -- the Home Depot is
> making their decision and this is one of those points to
> check yes, it meets OSHA and ANSI, and they're certifying
> that it does based on a label that they've put on there,
> then Home Depot is, I believe at that point, making the
> decision that, okay, that box is checked and so we're good
> to bring it in.  You know, along with the other
> requirements.  That's obviously not the only one.  But yes.

(Dkt. No. 132-2 at 5, Tr. at 171:14 -172:9.)

Tricam also asked Wing's President, Harold Arthur Wing, about his understanding

of Wing's false advertising claim:

> **Q.** And Tricam is accused here of making, I guess,
> assertions that are false advertising to consumers and to
> the Home Depot.  Do you understand that?
>
> **A.** Yes.
>
> **Q.** Do you have a understanding of what the -- what
> those false statements are that Tricam has made?
>
> **A.** Well, if you fail to meet the criteria in 6.7.5,
> you would not be ANSI compliant or certified.
>
> . . .

13

**Q.** Right.  But what I'm getting at is I want you to tell me if you are aware of what the statements are that Tricam is making, not the fact of whether or not they meet it.  But what is it that they're doing that constitutes false advertising?

**A.** They're saying they're ANSI 14.2 compliant and/or certified.

**Q.** And where are they saying that?

**A.** I believe they say it on the side of the ladder and on the website as well.

**Q.** Okay.  What website?

**A.** Home Depot's website.

**Q.** All right. Anywhere else?

**A.** On the ladder, I believe.

**Q.** Okay.  And are there any other statements that Tricam is making, in your view, that would constitute false advertising?

**A.** I haven't spent a lot of time reading up on it, so I -- I wouldn't know of any others.

(Dkt. No. 132-3 at 4, Tr. at 39:6-40:16.)

Mr. Wing was also asked:

**Q.** And then beneath that it says "Certifications and Listings, ANSI Certified."  Do you see that?

**A.** Yes.

**Q.** Is that one of the things that, in your understanding, that is a basis for Little Giant's allegations that Tricam is engaging in false advertising and deceptive trade practices?

**A.** Um, whether it's ANSI certified or compliant, it's
the same thing. It's if you don't meet that threshold, it's
not compliant, so that would be false advertising. I don't
know that OSHA has a compliance either.

(Dkt. No. 132-3 at 4-5, Tr. at 41:16-42:1.)

Counsel then showed Mr. Wing a photograph of the label on a Gorilla Ladder:

**Q. (BY MR. CHADWICK)** I'm gonna hand you what's been
marked as Ryan Moss Exhibit 18. I showed this to him
yesterday, and this is a photograph of the side of a Gorilla
Ladder that's the subject of this lawsuit. You can see over
the top of it it says MPX 17. Do you see that?

**A.** Yes.

**Q.** And do you see here where they're -- on this part
of the label there's a representation about OSHA?

**A.** Yes.

**Q.** Just take a minute and review that if you would.

**A.** (Witness complies.)

Okay.

**Q.** And it says "Manufacturer certifies conformance to
OSHA ANSI-A14.2 Code for metal ladders;" right?

**A.** Yes.

**Q.** Is that one of the statements that you understand
to be the basis for Little Giant's assertion that Tricam is
engaged in false advertising and deceptive trade practices?

**A.** Yeah. It can't be compliant or certified if it
doesn't meet all the criteria for the test.

**Q.** All right.  So you can set that aside. Actually,
why don't you give it back to me and I'll make sure it
doesn't get mixed in.

(Document handed to Mr. Chadwick.)

Other than the web page and the label that I've
just shown you, the last two exhibits, are there other
statements that Tricam has made that you understand to be
the basis for this lawsuit?

**A.** Not -- not for the basis of this lawsuit, no.

(Dkt. No. 132-3 at 5, Tr. at 42:19-43:22.)

The depositions of Mr. Moss and Mr. Wing took place on June 25 and June 26,

2018, respectively.  (Dkt. Nos. 114, 117, 132-2, 132-3.)  Wing did not supplement its

responses to Interrogatory Nos. 18 and 19 to include any of their deposition testimony

before fact discovery closed on July 31, 2018.

Wing employee Mel Huffaker was deposed on August 7, 2018, after fact

discovery closed.  (Dkt. No. 132-4.)

**Q.** What's your understanding of the lawsuit
that is transpiring right now between Little Giant and
Tricam in terms of the claim?  Do you have an
understanding of what the lawsuit's all about?

**A.** Very vague.

**Q.** What is your understanding?

**A.** My understanding is Tricam has eroded the
price of the ladders, and then claiming that their
product is ANSI and OSHA compliant, is probably the
two main points that I understand of it.

(Dkt. No. 132-4 at 4, Tr. at 20:9-19.)

16

**D.   Expert Reports**

Opening expert reports were due on August 17, 2018.  (Dkt. No. 73.)  Wing served

a liability report by Dr. Donald Bloswick, a professor in Mechanical Engineering (Dkt.

No. 119), a damages report by Dr. Scott W. Cragun (Dkt. No. 115), and a report by Hal

Poret surveying consumers on the statements made on the Gorilla Ladders (Dkt. No. 113-

16, Ex. 22).

Wing asked Dr. Bloswick to opine on two issues: (1) whether the outer rungs of

the Gorilla Ladders at issue "comply with the 2007 version of the ANSI-ASC A14.2"

standard and (2) "whether the outer rungs of the Gorilla ladder, if they are not compliant

with A14.2 standard, are of equivalent safety to the design prescribed by the A14.2

standard."  (Dkt. No. 119 at 2.)  Although Dr. Bloswick has OSHA experience, Wing did

not ask him to opine on whether the Gorilla Ladders comply with OSHA regulations, nor

did Dr. Bloswick offer any opinions on that topic.  (*See id.* at 1-2.)  He did not review any

OSHA regulations as part of his analysis.  (*See id.* at 3.)

Wing's damages expert Dr. Cragun summarized the alleged wrongful acts in his

report.  (Dkt. No. 115 at 6-7.)  He noted that "Tricam's Gorilla Ladders are promoted as

'ANSI Certified' and 'OSHA Compliant,'" and then described the alleged wrongful acts

solely in terms of ANSI compliance and certification.  (*Id.*)  Dr. Cragun did not identify

non-compliance with OSHA regulations as an alleged wrongful act.

Mr. Poret, however, treated ANSI and OSHA compliance collectively in his report

under the rubric of "industry safety standards" when conducting his two surveys.  (Dkt.

No. 113-16 at 3-4.)  In one of his surveys, he compared the following two labels, where

the "MANUFACTURER CERTIFIES CONFORMANCE TO OSHA ANSI A 14.2

CODE FOR METAL LADDERS" language and accompanying oval were removed from

the second.  (*Id.* at 13.)

 

Mr. Poret concluded that "OSHA/ANSI content did have a significant impact on

reported likelihood of purchase."  (*Id.* at 33.)  Mr. Poret's decision to treat OSHA and

ANSI compliance collectively was not based on the pleadings, interviews with Wing's

technical expert Dr. Bloswick, a review of Dr. Bloswick's report, or Wing's disclosures,

discovery responses, or deposition testimony of Wing's witnesses.  Rather, he relied on

"testimony in this case explaining that compliance with ANSI standards is one way to

comply with OSHA" and his own review of OSHA's website, which Mr. Poret believed

confirmed "that it requires compliance with ANSI A14.2."[5]  (Dkt. No. 113-16, Ex. 22 at

---

[5]	Nothing in Mr. Poret's qualifications indicates he is an expert in engineering,
ANSI standards, or OSHA regulations.  (*See* Dkt. No. 113-16 at 5-6.)

33 n.7 (citations omitted).) The deposition testimony relied on by Mr. Poret is that of third-party Thomas Schmitt (which was not provided to the Court) and Tricam employee Dennis Simpson, who was "not certain" but understood that "OSHA had adopted the ANSI standard." (*Id.*; Dkt. No. 113 ¶ 34; Dkt. 113-17, Ex. 24 at 85:4-86:2.) Notably, Mr. Poret relied on a citation to a regulation within "Marine Terminals" that "appl[ies] to employment within a marine terminal" rather than being generally applicable to metal ladders. 29 C.F.R. § 1917.1. Mr. Poret did not provide any explanation (or basis) for why he concluded a "Marine Terminals" regulation would be applicable to the Gorilla Ladders. Nevertheless, Mr. Poret concluded in a footnote: "Therefore, it is reasonable to treat reference to OSHA as a reference to compliance with ANSI." (Dkt. No. 113-16 at 33.)

Tricam served its rebuttal expert reports on September 19, 2018. (Dkt. No. 104.) Those reports included a rebuttal liability report from consulting engineer Jack Krafchick (Dkt. No. 121) and a report from Dr. Debbie Treise, a professor in Advertising, in rebuttal to Mr. Poret's survey report (Dkt. No. 113-1).

Mr. Krafchick offered opinions that the Gorilla Ladders comply with the ANSI A14.2 standard and that the use of a label that indicates that the Gorilla Ladders comply with the A14.2 standard, specifically section 6.7.5 of the standard, is "reasonable and appropriate." (Dkt. No. 121 at 7.) Although he has experience with the OSHA regulations for ladders, he did not offer opinions in his report whether the Gorilla Ladders complied with OSHA regulations. (*Id.* at 2-3.) Mr. Krafchick did rely on OSHA procedures to support his opinion that the ANSI A14.2 standard should be liberally

construed.  (*Id.* at 31-34.)  In particular, Mr. Krafchick opined that the fact that OSHA does not consider "de minimis" conditions to be violations that incur penalties supports a liberal construction of the ANSI A14.2 standard.[6]  (*Id.*)  Mr. Krafchick also summarized the OSHA regulations pertaining to ladders, noting the "regulations are not entirely consistent with the requirements given in A14.2 standard" and the regulation relied on by Mr. Poret was "a labeling requirement and says nothing to support an assumption that OSHA regulations and ANSI requirements are interchangeable."  (*Id.* at 21 & n.9.)

Dr. Treise's rebuttal report contained several criticisms of Mr. Poret's survey report.  Relevant to this Motion, Dr. Treise criticized Mr. Poret for "fail[ing] to isolate the representations about ANSI – as compared to OSHA – in the ANSI Label Statement" and for "trying to determine the impact on consumer purchase decisions of . . . a combination statement of both OSHA and ANSI" rather than the statement of ANSI compliance or certification.  (Dkt. No. 113-1 at 8-14.)  Dr. Treise also criticized Mr. Poret for testing the importance of "the more general 'Compliance with industry safety standards'" rather than ANSI compliance.  (*Id.* at 8, 24-25.)

## E.     Wing's Supplementation of Its Interrogatory Responses

On September 26, 2018, after Tricam served its rebuttal reports, Wing supplemented its responses to Interrogatory No. 18 and 19 to assert:

> the statement "MANUFACTURER CERTIFIES CONFORMANCE TO OSHA ANSI A 14.2 CODE FOR METAL LADDERS" found on the label

---

[6]     "De minimis" conditions are conditions where an employer complies with the intent of an OSHA standard but deviated from its particular requirements in a manner that has no immediate impact on employee safety or health.  (Dkt. No. 121 at 31-32.)

of every MPX ladder (reproduced below) is false because the MPX ladders do not comply with all aspects of the ANSI A14.2 standard, which is the basis for Tricam asserting that the MPX ladders are ANSI and OSHA compliant.



(Dkt. No. 113-2 at 7-8.)  According to Wing, it has contended that the entirety of the statement "MANUFACTURER CERTIFIES CONFORMANCE TO OSHA ANSI A 14.2 CODE FOR METAL LADDERS" is false "throughout the entire case." (*Id.*)  Wing claimed the supplemental responses were "provided in an abundance of caution based on the unsupported and surprising opinion from Tricam's expert, Dr. Treise, who alleges that Tricam's statements about OSHA compliance via its ANSI compliance are beyond the scope of Wing's false advertising claims." (*Id.* at 3.)

### III. <u>LEGAL STANDARD</u>

A party's duty to supplement its interrogatory responses is set forth as follows in Federal Rule of Civil Procedure 26(e)(1):

A party . . . who has responded to an interrogatory . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

As set forth in Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  In addition to or instead of such exclusion, a court may impose other sanctions, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  Fed. R. Civ. P. 37(c)(1)(C), 37(b)(2)(A)(ii).

When determining whether exclusion of the information contained in an untimely supplement is warranted, the Eighth Circuit has in similar circumstances approved of the use of a "balancing test" by which a court is to "evaluate[ ] the importance of the evidence to the [plaintiff], the justifications for [its] failure to comply [with the requirements of Rule 26], the prejudice to the [defendant] if the evidence were allowed to be used, and whether a continuance would effectively cure the prejudice."  *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 405 (8th Cir. 2013) (quoting *Citizens Bank of Batesville, Ark. v. Ford Motor Co.*, 16 F.3d 965, 966 (8th Cir. 1994)).  A court's "discretion to fashion a remedy or sanction" is "wide," but "narrows as the severity of the sanction or remedy . . . increases."  *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).  Furthermore, if "striking the [untimely evidence] would be tantamount to dismissal," the court is to consider "lesser sanctions" before excluding it.  *Id.* (quoting *Keefer v. Provident Life and Accident Ins. Co.*, 238 F.3d 937 (8th Cir. 2000)).

# IV.   DISCUSSION

## A.   Wing's Supplementation Was Untimely.

The Court first considers whether Wing supplemented its interrogatory responses "in a timely manner."  *See* Fed. R. Civ. P. 26(e)(1)(A).  Wing first argues that it did not even need to supplement its interrogatory responses and only did so "in an abundance of caution."  (Dkt. No. 130 at 14.)  According to Wing, "[t]he basis for Wing's false advertising claims is, and has always been, that Tricam's collective representation of OSHA/ANSI compliance is false because the MPX ladders do not meet a mandatory requirement of the ANSI A14.2 standard, specifically section 6.7.5."  (*Id.* at 2.)  The Court is cognizant of Wing's position that, as a technical matter, the Gorilla Ladders may not comply with relevant OSHA regulations if they do not comply with the ANSI A14.2 standard.[7]  But here, the "information" that should have been disclosed is Wing's contention that the OSHA language (whether alone or as a "collective" representation with the ANSI language) on the Gorilla Ladders label or The Home Depot's website is false or misleading—not the technical relationship between OSHA regulations and the ANSI A14.2 standard.

---

[7]     This issue was not discussed in any expert reports.  The only expert opinion on this issue is Mr. Krafchick's testimony elicited by Wing after Tricam filed this motion. Wing has not provided the Court with any expert report, discovery responses, or discovery disclosures identifying which provisions of OSHA are allegedly violated if the Gorilla Ladders do not comply with the ANSI A14.2 standard, and based on Mr. Krafchick's testimony, different sections of the OSHA regulations incorporate different versions of ANSI standards.  (*See generally*, Dkt. No. 139-1 at 54-67, Tr. at 167:16-180:20.).  The lack of clarity as to which OSHA regulations are allegedly not met underscores of the tardiness of Wing's OSHA contention.

The problem for Wing is that nothing in its Complaint, interrogatory responses, Rule 26 disclosures, or responses to Tricam's Requests for Admission discloses the contention that "Tricam's collective representation of OSHA/ANSI compliance is false." Wing never indicated it was treating the OSHA and ANSI statements as a "collective" representation. On the contrary, as explained below, Wing took pains throughout discovery to separate the ANSI language from the OSHA language and to identify **only** the ANSI language as allegedly false.

First, in the Complaint, Wing referred to the ANSI language and OSHA language separately: "In its marketing information, Tricam expressly represents to The Home Depot and to the consuming public that the Infringing Gorilla Ladders are 'ANSI certified' and 'OSHA compliant.'" (Dkt. No. 1 ¶ 19.) Wing then proceeded to repeatedly identify the ANSI representation as false and repeatedly allege the Gorilla Ladders did not comply with ANSI, without any mention of OSHA. (*Id.* ¶¶ 20-28, 36-48.) Notably, Wing did not seek any relief with respect to "OSHA compliant" language in its Prayer for Relief. Wing's Complaint does not allege that the OSHA language is false or misleading. It also does not suggest that Wing is treating the OSHA and ANSI language as a "collective" representation for purposes of the false advertising claims. Rather, it parses the statements "ANSI certified" and "OSHA compliant" and then relies upon only the ANSI statements.

Second, when asked in Interrogatory Nos. 18 and 19 to "[i]dentify with specificity the alleged misleading or false statement(s) made by Tricam to The Home Depot that provide the basis for Wing's false advertising and deceptive trade practices causes of

24

action," Wing responded by only identifying statements of ANSI compliance. (Dkt. No.

116.) The word OSHA does not appear in the responses. Not only did Wing not identify

any OSHA language as false, Wing also did not articulate any contention that because the

ANSI language was allegedly false, the OSHA language also was false—even though the

interrogatories also asked Wing to identify "what is misleading or false about the

statement(s)." (Dkt. No. 116 at 1.) "Parties are 'entitled to accept answers to previous

interrogatories as true, and to refrain from seeking additional discovery directed to the

same issue.'" *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190

(8th Cir. 1995) (quoting *Averbach v. Rival Mfg. Co.,* 879 F.2d 1196, 1201 (3d Cir.

1989)). Here, Tricam was entitled to accept Wing's identification of ANSI-only

language as allegedly false and to develop its litigation strategy accordingly.

Third, when served with Requests for Admissions asking Wing to admit that the

label—which included the statement "MANUFACTURER CERTIFIES

CONFORMANCE TO OSHA ANSI A 14.2 CODE FOR METAL LADDERS" that

Wing now claims should be treated as a "collective" representation—Wing admitted only

that "Wing contends that **any representation by Tricam that the accused Tricam**

**ladders conform to ANSI 14.2, and more specifically, with ANSI 14.2 section 6.7.5**,

constitutes a false and/or misleading statement." (Dkt. No. 113-8, Ex. 11 at 1-2

(emphasis added).) Wing now argues that the language "including Tricam's use of the

label depicted in Exhibit A" in its responses somehow "accused 'the label' as false."

(Dkt. No. 130 at 4-5.) This argument does not persuade the Court. When read in context,

it is clear that Wing admitted that any representation of ANSI compliance was false,

whether made on the label or elsewhere, not that the entire label or other statements on the label were false. In fact, Wing objected to "the label" as vague and "otherwise denie[d] the request" except for its admission regarding ANSI statements. (Dkt. No. 113-8, Ex. 11 at 1-2.) Rather than putting Tricam on notice that Wing was contending the OSHA statement was false or was being treated "collective[ly]" with the ANSI statement, Wing's responses excluded all language in the label other than the representation that the Gorilla Ladders conform to ANSI 14.2.[8]

Fourth, nothing in Wing's liability and damages expert reports suggests that Wing thought the OSHA language was false or that OSHA compliance depended on ANSI compliance. In fact, those reports confirm that Wing's liability contentions were limited to representations of ANSI (not OSHA) compliance. Dr. Cragun observed "Tricam's Gorilla Ladders are promoted as 'ANSI Certified' and 'OSHA Compliant,'" and then described the "Alleged Wrongful Acts" solely in terms of ANSI representations. (Dkt. No. 115 at 6-7.) More importantly, Wing's liability expert Dr. Bloswick did not offer any opinions as to whether the Gorilla Ladders complied with OSHA or any relationship between the ANSI standards and OSHA regulations. (*See* Dkt. No. 119.) The crux of Wing's current false advertising theory is that a ladder that does not conform with the mandatory provisions of the ANSI A14.2 standard does not conform to OSHA

---

[8] Wing notes that Tricam never proposed any requests for admission about OSHA. It is unclear why Wing thinks Tricam should have done so, given that nothing in the Complaint or Wing's initial disclosures put Tricam on notice that Wing thought the OSHA language was false. Wing also does not appear to have propounded any discovery about OSHA to Tricam.

regulations, and that the ANSI and OSHA standards are "inextricably intertwined," rendering the "collective OSHA/ANSI statements" false. (Dkt. No. 130 at 1-2, 3 & n.2.) Indeed, Wing refers to the ANSI and OSHA language as a "collective" statement throughout its brief. (*E.g.*, *id.* at 3, 5, 6, 13, 17, 21.) But the only expert testimony on the relationship between the ANSI A14.2 standard for ladders and OSHA regulations was elicited by Wing's counsel when deposing Tricam's expert Mr. Krafchick—**after** Tricam brought this motion and **before** Wing filed its opposition brief.[9] (*See* Dkt. Nos. 109, 130, 139-1.) Mr. Krafchick's testimony does not constitute a timely disclosure that Wing thought the OSHA language was false or that Wing was treating the OSHA and ANSI language "collective[ly]." Further, the Court cannot discern any rational reason why Wing would not have had its technical expert Dr. Bloswick offer opinions as to the relationship between the OSHA regulations and ANSI standard in his expert report (including how they are "inextricably intertwined") had Wing really intended from the outset of this case to assert at trial that the Gorilla Ladders did not comply with OSHA regulations.

Wing also claims its contention that the "entire OSHA/ANSI label statement" was false was disclosed through deposition testimony. (*See* Dkt. No. 130 at 6-8.) But when asked, Mr. Moss and Mr. Wing both identified only ANSI representations as the basis for Wing's false advertising claims. (Dkt. No. 114 at 4-5, Tr. at 97:11-98:2, 169:24-165:18; Dkt. No. 132-3 at 4, Tr. at 39:6-40:16, 41:16-42:1.) Mr. Moss did not testify that Wing

---

[9]  This testimony was beyond the scope of the opinions in Mr. Krafchick's report.

believed the OSHA statement was false or that a "collective" OSHA/ANSI statement was false.  (Dkt. No. 132-2 at 5, Tr. at 171:14 -172:9.)  While Mr. Wing agreed that the "Manufacturer certifies conformance to OSHA ANSI-A14.2 Code for metal ladders" language was a statement Wing believed was false, he did not testify that Wing believed the OSHA statement was false or that Tricam's representations regarding OSHA and ANSI were "collective."  (Dkt. No. 132-3, Tr. at 42:19-43:22.)  At most, their testimony suggests that those witnesses and Wing believed the ANSI portion of the label was false. The Court also rejects Wing's argument that Wing employee Mel Huffaker's "vague understanding" that the lawsuit was about the fact that "Tricam has eroded the price of the ladders, and then claiming that their product is ANSI and OSHA compliant, is probably the two main points that I understand of it" (*see* Dkt. No. 132-4 at 4, Tr. at 20:10-19) was a disclosure that Wing had identified the OSHA language as false or was treating the OSHA and ANSI language collectively.

The Court is similarly unpersuaded by Wing's reliance on deposition testimony (whether of Tricam employees, Wing employees, or third parties) to the effect that the Gorilla Ladders cannot comply with OSHA regulations if they do not meet the ANSI A14.2 standard.  (*See* Dkt. No. 130 at 20.)  The relevant inquiry is when Wing disclosed its contention that the OSHA language was false to Tricam, not when Tricam knew the OSHA language existed or that OSHA regulations may be related to the ANSI standard. *See U.S., ex rel. Nat. Res. Def. Council v. Lockheed Martin Corp.*, No. 5:99-CV-170, 2014 WL 6909652, at *6 (W.D. Ky. Dec. 8, 2014) ("Knowing of the statement and its factual context, however, is different from knowing that one's opponent alleges the

statement was false.").  The scattershot references to OSHA and ANSI relied on by Wing

in opposition to Tricam's motion are no substitute for meeting the disclosure

requirements of Rule 26(e).  *See Transclean*, 77 F. Supp. 2d at 1062 ("When discovery

closed on November 15, 1998, the Plaintiffs quite properly relied upon the completeness

of Bridgewood's responses to their Interrogatories, as supplemented by the other

discovery documents that Bridgewood had produced.").

In sum, the Court finds that Wing did not disclose its contention that the OSHA

certified language on the Gorilla Ladders label and The Home Depot's website was false

or misleading or that Wing was contending a "collective representation of OSHA/ANSI

compliance" was false before the July 31, 2018 close of fact discovery.

Consequently, the Court also considers Wing's argument that its supplemental

responses are timely because they occurred shortly after Wing received Dr. Treise's

report and became aware "that Tricam was misconstruing Wing's prior responses as

somehow bifurcating the accused OSHA/ANSI statements into separate OSHA-

compliance and ANSI-compliance statements."  (Dkt. No. 130 at 14-15.)  "Timeliness

under Rule 26(e)(1)(A) is measured from 'the date when the facts are discovered, not

some nebulous date when counsel first realized that there was some significance to

them.'"  *Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1077 (D. Minn. 2015) (quoting

*Havenfield Corp. v. H & R Block, Inc.,* 509 F.2d 1263, 1272 (8th Cir. 1975)).  Wing

knew the Gorilla Ladders label and The Home Depot's website referred to OSHA on the

day it filed the suit (Dkt. No. 1 ¶ 19), and it is possible that Wing believed from the outset

of this case that the OSHA language was false due to the relationship between the OSHA

regulations and the ANSI A14.2 standard. Nevertheless, Wing failed to identify the OSHA language as false or inform Tricam that it was treating the OSHA and ANSI language as a collective representation any time during fact discovery, instead only asserting that contention after receiving Dr. Treise's report.

Given that it was Wing who separated the OSHA and ANSI language at the beginning of this case and identified only ANSI language as false in its discovery disclosures and responses, Wing's suggestion that Tricam is at fault for treating the ANSI language separately from the OSHA language is not well taken. "For litigation to function efficiently, parties must provide clear and accurate responses to discovery requests." *Transclean*, 77 F. Supp. 2d at 1062. Wing cannot render an untimely disclosure timely by saying it was surprised that Tricam took Wing at its word that the allegedly false statements were those of ANSI compliance—and nothing else. Accordingly, the Court concludes that Wing failed to comply with Rule 26(e)(1).

**B.** **Striking Wing's Supplemental Responses to Interrogatory Nos. 18 and 19 Is Appropriate**

The Court next considers whether to strike Wing's September 26 supplemental responses to Interrogatory Nos. 18 and 19. In making this determination, the Court considers the importance of the evidence to Wing, the justifications for Wing's failure to comply with the requirements of Rule 26, the prejudice to Tricam if Wing's supplemental responses are not stricken, and whether a continuance would effectively cure the prejudice. *See Longlois*, 88 F. Supp. 3d at 1078 (striking supplemental interrogatory responses); *see also Bruhn Farms Joint Venture v. Fireman's Fund Ins. Co.*, No. 13-CV-

4106-CJW, 2017 WL 632105, at *4-7 (N.D. Iowa Feb. 13, 2017) (striking supplemental interrogatory responses and prohibiting plaintiff from seeking additional categories of damages disclosed therein).  The Court finds these considerations weigh in favor of striking the supplemental interrogatory responses.

The Court first considers the importance of Wing's contention that the OSHA statements are false.  In its brief, Wing did not argue that its OSHA contention is important.  (Dkt. No. 130 at 22-23.)  Instead, Wing argues this factor is neutral because no new **evidence** was disclosed in the supplemental responses.  (*Id.*)  This argument misses the mark.  The question is whether Wing's **contention** that the entire "MANUFACTURER CERTIFIES CONFORMANCE TO OSHA ANSI A 14.2 CODE FOR METAL LADDERS" statement is false should be stricken, thereby limiting Wing to the contention in its initial interrogatory responses that the statements that Gorilla Ladders "are ANSI compliant" or "comply with the requirements of ANSI 14.2" are false.  (*See* Dkt. No. 113-2 at 2-3, 7-9.)

Wing could have argued, for example, that its OSHA contention is important because the word "OSHA" on the Gorilla Ladder's label is significantly larger than the word "ANSI" below it.  Wing did not (possibly because it would then be difficult to explain why it focused on the ANSI language rather than the OSHA language throughout fact discovery).  To the extent the OSHA contention is important to Wing's false advertising claims, it "only serves to highlight the absence of any justification for [Wing's] untimely supplementation" and failure to disclose its OSHA contention earlier.

31

*See Longlois*, 88 F. Supp. 3d at 1078. This factor favors striking the supplemental interrogatory responses.

As to prejudice, the prejudice to Tricam if Wing's OSHA contention is not stricken is significant. During fact discovery, Tricam deposed nine Wing employees and eleven third-party witnesses, including from The Home Depot and other ladder manufacturers. (Dkt. No. 113 ¶ 34.) Further, Tricam's expert Dr. Treise conducted a survey and critiqued Mr. Poret's survey report based on Wing's disclosures that only the ANSI statements were allegedly false, including observing that "although some respondents in open-ended comments specifically referenced OSHA as a factor in making a purchase, not one of the hundreds of respondents volunteered that ANSI-compliance was a factor." (*See* Dkt. No. 35; Dkt. No. 113-1 at 11.) The Court does not doubt that fact and expert discovery would have had a different complexion had Wing asserted at the outset of this case that the OSHA language on the label and The Home Depot's website was false. This factor favors striking the supplemental responses.

Finally, the Court considers whether a continuance would effectively cure the prejudice to Tricam. Wing argues that any prejudice can be cured by an extension of the pretrial schedule, permitting Tricam to take another 30(b)(6) deposition of Wing, and permitting supplemental expert reports on the interplay between OSHA and ANSI.[10] (Dkt. No. 130 at 24.) "Such an approach would impose substantial costs on [Tricam] and

---

[10]     Wing has not moved to amend the scheduling order or established good cause for doing so.

require the expenditure of additional judicial resources." *Longlois*, 88 F. Supp. 3d at 1078. It also ignores the fact that Tricam reasonably may want to depose several third parties again to explore the importance of the OSHA contention, including The Home Depot, and it is uncertain whether Tricam would be able to do so without motion practice. For example, Tricam asserts that the parties "negotiated with The Home Depot for months about the scope of the document requests and deposition testimony" (Dkt. No. 111 at 24), and Wing has not claimed The Home Depot would consent to additional discovery. Tricam also asserts its survey expert Dr. Treise would need to conduct a new survey if Wing's OSHA contention is not stricken, as Dr. Treise's rebuttal report was based on Wing's original ANSI-only contention. (*Id.* at 26.) In sum, "[a]lthough a continuance, and a reopening of discovery, might alleviate some of the prejudice inflicted by unfair surprise, such a remedy would wreak its own distinctive prejudice, by unnecessarily prolonging the pretrial processing of the Plaintiff['s] claims, with the attendant expense of further discovery, and prolonged Motion practice." *Transclean*, 77 F. Supp. 2d at 1064. The Court concludes that Tricam, having litigated the entire case based on contentions that ANSI representations alone were false, would be prejudiced by having to re-litigate the case based on a new contention that the OSHA statements were false, and by the consequent delay and expense.

Further, the Court is concerned that Tricam has been prejudiced in other ways that cannot be remedied through a continuance. In particular, Wing appears to have used Dr. Treise's rebuttal survey report as a roadmap for drafting its supplemental interrogatory responses. The purpose of Rule 26(e) is to "prevent Trial by ambush." *Transclean*, 77 F.

Supp. 2d at 1061. Permitting Wing to assert new contentions in response to a rebuttal expert report, well after the close of fact discovery, does not fulfill that goal. In fact, it would encourage litigants to re-write their contentions to undermine and circumvent timely disclosed expert opinions. Granting a continuance would not "place on [Wing] the burden for unnecessarily complicating these proceedings, properly hold [Wing] to account for [its] apparent lack of diligence, or deter future litigants from committing similar lapses with matters of high evidentiary import."[11] *Longlois*, 88 F. Supp. 3d at 1078.

Upon weighing these factors, the Court concludes that Wing's September 26, 2018 supplemental responses to Interrogatory Nos. 18 and 19 should be stricken. In so deciding, the Court notes that striking those responses is not "tantamount to dismissal." *See Carmody*, 713 F. 3d at 405. Wing can still contend that Tricam's representations regarding ANSI compliance are false and seek relief with respect to those representations.

## V.     ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Defendant's Motion to Strike Untimely Supplemental Interrogatory Responses (Dkt. No. 109) is **GRANTED**.

---

[11]     Wing argues that it will be prejudiced at trial if the Court strikes the supplemental interrogatory responses. If that is the case (and the Court declines to speculate on the consequences of this Order at trial), it is Wing, not Tricam, who should bear the burden for Wing's untimely disclosure.

2. Plaintiff's September 26, 2018 Supplemental Responses to Interrogatory Nos.

   18 and 19 are **STRICKEN**.

DATED: December 4, 2018                 *s/Elizabeth Cowan Wright*
                                        ELIZABETH COWAN WRIGHT
                                        United States Magistrate Judge