UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Wing Enterprises, Inc., d/b/a Little Giant
Ladder Systems, a Utah corporation,

        Plaintiff,

v.

Tricam Industries, Inc., a Minnesota
corporation,

        Defendant.

Case No. 17-cv-1769 (ECT/ECW)

**OPINION AND ORDER**

---

Mark A. Miller, Brett L. Foster, and Elliot James Hales, Dorsey & Whitney LLP, Salt Lake City, UT, and Clint Conner and Caitlin L. D. Hull, Dorsey & Whitney LLP, Minneapolis, MN, for Plaintiff Wing Enterprises, Inc.

Sarah M. Stensland, Eric H. Chadwick, Adam Edward Szymanski, Thomas G. Dickson, and Tye Biasco, Patterson Thuente Christensen Pedersen, PA, Minneapolis, MN, for Defendant Tricam Industries, Inc.

---

The Parties manufacture competing brands of articulated ladders, also known as multi-position (or "MPX") ladders. Plaintiff Wing Enterprises, Inc., makes multi-position ladders under the Little Giant brand. Defendant Tricam Industries, Inc. makes multi-position ladders under the Gorilla Ladders brand. Wing filed this lawsuit in May 2017, alleging that Tricam had infringed one of Wing's patents and had engaged in false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and the Minnesota Deceptive Trade Practices Act ("DTPA"), Minn. Stat. § 325D.44. *See* Compl. ¶¶ 29–48 [ECF No. 1]. Tricam filed patent-related counterclaims. *See* Am. Answer & Counterclaims at Counts 1

& 2 [ECF No. 14].   Wing and Tricam have resolved the patent-related claims, *see* Order for Dismissal With Prejudice of Certain Counts [ECF No. 82], but the false-advertising claims remain.   The thrust of those claims is that Tricam represented that its Gorilla Ladders comply with ANSI ASC A14.2 ("ANSI A14.2"), a voluntary industry standard for portable metal ladders that was developed by the American Ladder Institute, but in fact the rungs of its ladders are not sufficiently deep all the way across to satisfy that standard as Wing understands it.

Tricam now moves for summary judgment against Wing's false-advertising claims. ECF No. 159.   Tricam also moves to exclude the testimony of two of Wing's expert witnesses.   ECF Nos. 220, 224.   The Court has subject-matter jurisdiction over the Lanham-Act claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the DTPA claim pursuant to 28 U.S.C. § 1367(a).   For the reasons described below: (1) the *Daubert* motion as to Wing's expert Donald Bloswick will be denied; (2) the *Daubert* motion as to Wing's expert Hal Poret will be granted; and (3) Tricam's summary-judgment motion will be granted.

I

Under the Lanham Act:

> Any person who, . . . in connection with any . . . services, . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which. . . in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . of his or her . . . goods, . . . shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).  The "purpose of the Lanham Act is 'to protect persons engaged in commerce against false advertising and unfair competition.'"  *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390 (8th Cir. 2004) (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998)).

Wing alleges that three[1] different statements constitute false advertisements by Tricam: (1) the label affixed to each ladder containing an oval icon that bears the text "MANUFACTURER CERTIFIES CONFORMANCE TO OSHA[2] ANSI A14.2 CODE FOR METAL LADDERS"; (2) the portion of each product's page at Home Depot's website that provides: "Certifications and Listings: ANSI Certified"; and (3) the portion of each product's page on Tricam's website that provides: "CERTIFICATIONS: ANSI A14.2 OSHA."  Wing Mem. Opp'n Summ. J. at 4 [ECF No. 260].  The second and third challenged statements also occur in close proximity to OSHA-conformance statements, but Wing's false-advertising claims are not based on any OSHA-related statements.

To establish a false-advertising claim under the Lanham Act, a plaintiff must prove:

---

[1]     In its opening summary-judgment brief, Tricam identifies two additional statements as potentially being at issue in the Parties' dispute—certain statements in the contract between Tricam and Home Depot, and certain statements in a report from Tricam's third-party testing service, Intertek, regarding the ladders' ANSI compliance.  *See, e.g.*, Tricam Mem. Supp. Summ. J. at 16 [ECF No. 160].  But Wing clarifies in its brief opposing summary judgment that it does not contend that either the Home Depot contract or the Intertek report constitute commercial advertisements; rather, it argues, those documents constitute evidence showing that "Tricam knew and intended the 'ANSI Certified' statement on homedepot.com to be used as a commercial advertisement."  Wing Mem. Opp'n Summ. J. at 5 [ECF No. 260].

[2]     "OSHA" is the Occupational Safety and Health Administration, a federal agency within the U.S. Department of Labor.

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*United Indus.*, 140 F.3d at 1180 (citations omitted). Failure to demonstrate any one of those five elements is fatal to the claim. *Allsup, Inc. v. Advantage 2000 Consultants Inc.*, 428 F.3d 1135, 1138 (8th Cir. 2005) (citation omitted). The Minnesota Deceptive Trade Practices Act "mirrors" the Lanham Act, and courts therefore "use the same analysis to evaluate false advertising claims that are made simultaneously under the federal and state statutes." *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, No. 09-cv-1091 (JNE/JSM), 2011 WL 4457956, *6 (D. Minn. Sept. 23, 2011) (quoting *Med. Graphics Corp. v. Sensormedics Corp.*, 872 F. Supp. 643, 649 (D. Minn. 1994)).

## II

Before Tricam's summary-judgment motion can be resolved, the universe of potentially relevant facts must be defined. Tricam moves to exclude the testimony of two of Wing's experts: Donald S. Bloswick, as to his opinions about whether Tricam's ladders failed to conform to ANSI A14.2 and thus whether its statements that it ladders did conform were false; and Hal Poret, as to his opinions about whether Tricam's ANSI-certification statements were material. Bloswick's testimony will be admitted; Poret's testimony will be excluded.

A

Rule 702 of the Federal Rules of Evidence govern the admissibility of expert testimony.  That rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

*See also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  "District courts have wide latitude in determining whether an expert's testimony is reliable."  *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007) (citation omitted).  District courts have identified a number of factors they may consider in determining whether an expert's testimony is the product of "reliable principles and methods," including:

> (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community.

*Smith v. Cangieter*, 462 F.3d 920, 923 (8th Cir. 2006) (citation omitted).  "This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject

*Daubert* factors as the particular case demands. *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005) (citation omitted). As long as the evidence indicates that the expert evidence is reliable and relevant, "no single requirement for admissibility" governs. *Id.* "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (citation omitted). But the court must exclude an expert's opinion if it "is so fundamentally unsupported that it can offer no assistance to the jury." *Id.* at 929–30 (citation omitted). Furthermore, "under *Daubert* and Rule 403 of the Federal Rules of Evidence, the probative value of the expert testimony must not be substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury." *United States v. Solorio-Tafolla*, 324 F.3d 964, 966 (8th Cir. 2003) (citation omitted).

## B

Wing relies on Bloswick's expert testimony to show that Tricam's ANSI-conformance statements are literally false. Wing Mem. Opp'n Summ. J. at 25–26, 42. In particular, the Parties dispute whether Tricam's ladders satisfy Section 6.7.5 of ANSI A14.2, which requires, in relevant part, that "[t]rapezoidal, D-shaped or equivalent, square or rectangular rungs shall have a step surface of not less than one inch, either flat or along a segment of arc of 3inches or greater radius." Preliminary Report by Donald Bloswick ("Bloswick Report") at 4 (citing ANSI A14.2) [ECF No. 119]. Tricam says the

step surface of its rungs is deep enough; Wing, based largely on Bloswick's testimony, *see id.*, contends they are not, at least not across their full width.

Bloswick holds a Ph.D. in Industrial and Operations Engineering and for more than three decades was a professor in the field of ergonomics. *Id.* at 1. His work has included independent research on ladder-climbing safety and biomechanics. *Id.* From approximately 1986 to 2014, he served as an independent expert on the ANSI A14 Committee, where he focused on the ANSI A14.3 (Fixed Ladder) subcommittee. *Id.* As an independent specialist, he is not affiliated with any ladder manufacturer or related regulatory industry. *Id.* Tricam does not dispute that Bloswick "is qualified as an expert by knowledge, skill, experience, training, or education," as Rule 702 requires; he clearly is. Furthermore, specialized knowledge such as Bloswick's would be helpful to the ultimate trier of fact in understanding what the ANSI A14.2 standard means, and consequently whether Tricam's ladders conform to it.

Tricam also does not dispute some of the initial observations and calculations Bloswick made in examining Tricam's ladder design and which he used in reaching his final conclusion (though of course Tricam disputes that conclusion vigorously). Those undisputed initial observations and calculations are helpful to understanding Bloswick's reasoning—indeed, the entire substance of the Parties' dispute under the Lanham Act is about how the step-surface-depth requirement could, or must, be interpreted.

Bloswick examined the rung design of Tricam's ladders, in which no Party disputes the rungs are "connected to the side rails by crimping (compressing) a hollow, trapezoidal rung at the ends where the rung overlaps with the side rails of the outer rail of the ladder,

then riveting the crimped portion to the side rail using two rivets at each end of the crimped rung." *See* Bloswick Report at 6 (alteration in original).   He observed that "the rung is generally flat in its center portion with a pinched, sloped portion at each end of the rung where it has been crimped." *Id.* at 7 (footnote omitted).  Bloswick measured the dimensions of the rung across its width.  *Id.* at 7–8.   He found that the middle section of the rung, approximately nine inches across, was generally flat and measured "slightly more than one inch deep" from front to back.  *Id.* at 7.  But he found that approximately 1.5 inches on the outer edges of each rung, where the rung was crimped and sloped, measured less than one inch deep.  *Id.*   Again, Tricam does not dispute any of these facts, only whether ladders constructed in such a way conform to ANSI A14.2.

Bloswick concluded that they do not conform to the standard.  He relied in part on the standard's definition of the term "step surfaces" as meaning "[t]he clear portion of steps, rungs, or cleats on which a person may step while ascending or descending [the] ladder." *Id.* at 9 (footnote omitted) (citing Section 4 of ANSI A14.2).  Bloswick opined that nothing in the ladder's design prevents a user from stepping on the tapered sides of Tricam's crimped and welded rungs.  Bloswick Report at 9.  He further noted that, based on his experience and research in ladder-climbing ergonomics, a person who uses a natural hand-foot placement is likely to step on all portions of the rungs when ascending or descending the ladder, including the crimped end portions of the rungs.  *Id.*  In his view, therefore, the crimped portion of the rungs *are* part of "[t]he clear portion of [the . . .] rungs[, . . .] on which a person may step while ascending or descending [the] ladder." *Id.* Not only *may* a user step on the crimped portion of the rung, he says, they are "*likely*" to

8

step on those portions.  *Id.* (emphasis added).  Indeed, Bloswick cites a number of other witnesses in this case who have concluded as much.  *Id.*  And because those crimped portions on which users may step are less than one inch deep, and furthermore because they are steeply sloped, Bloswick concludes, they do not conform to Section 6.7.5.  *Id.* at 9–20.

Tricam argues that Bloswick's interpretation of Section 6.7.5 is not sufficiently reliable to be admitted under Rule 702.  Tricam Mem. Supp. Mot. Exclude Bloswick at 6 [ECF No. 221].  Not so.  Bloswick addressed Tricam's reliability criticisms in his report. Bloswick explained why he does not believe that the provision elsewhere in the ANSI standard stating that the standard "should be liberally construed considering the rationale" of providing users "reasonable safety" conflicts with his analysis.  *Compare* Bloswick Report at 20–22, 27–31 *with* Tricam Mem. Supp. Mot. Exclude Bloswick at 7–11.  He explains why the step-surface depth requirement is not, in his opinion, susceptible to alternate interpretations.  Bloswick Report at 20–22.  Similarly, he offers rationales drawn from his own professional experience as to why the interpretations of the standard from those within the ladder industry, or those that a third-party testing service may have applied, do not suffice to show compliance with the standard.  *Compare* Bloswick Report at 23–25 *with* Tricam Mem. Supp. Mot. Exclude Bloswick at 14–21.

It suffices to say that Bloswick's opinions are not speculative or without factual basis; they are merely disputed.  Given Bloswick's experience and credentials, including his experience as a member of the ANSI A14 committee, he is qualified to offer those opinions to a jury.  It may be that a jury would not agree, or that it would find the step-

surface-depth requirement so susceptible to multiple meanings that Tricam's statements regarding ANSI conformance cannot be literally false. But "[t]he Supreme Court has been clear about how infirmities in expert testimony should be exposed: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Olson*, 481 F.3d at 626 (quoting *Daubert*, 509 U.S. at 596).

## C

Wing offers the expert testimony of Hal Poret primarily for the purpose of showing that Tricam's allegedly false statements were material. Poret performed two surveys purporting to show that the allegedly false statements would be material to consumers' purchasing decisions: a labeling survey, intended to measure consumer reaction to the allegedly false statement on the label, and an importance survey, intended to assess the importance to consumers of compliance with industry safety standards in general. Tricam does not dispute that Poret possesses the necessary skill and expertise to be qualified as an expert witness; he clearly does. *See* Tricam Mem. Supp. Mot. Exclude Poret at 1 ("Tricam does not challenge the qualifications of Wing's survey expert, Hal Poret.") [ECF No. 225]. Instead, it contends that Poret's testimony should be excluded because neither one of his surveys is relevant to Wing's claims in this case, which are specific to ANSI—not ANSI in addition to OSHA, or industry safety standards in general. *Id.* Tricam also criticizes the

methodology of the labeling survey for failing to approximate the marketplace. *Id.* at 19–24.

The latter argument is unpersuasive. Specifically, Tricam argues that Poret's labeling survey does not show respondents the labels in their real-life context: he crops the label, magnifies it, specifies the length of time respondents must view the resulting images, and otherwise fails to approximate how the labels themselves look on the Home Depot retail floor, where the products are wrapped in plastic and stacked in bays, their labels partially obscured. *Id.* These might be fair points if the survey had been intended to test what message the statements conveyed (as relevant to the falsity element), *see Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 452–53 (D.N.J. 2009), or whether consumer confusion existed in a trademark case, *see Sears, Roebuck and Co. v. Menard, Inc.*, No. 01 C 9843, 2003 WL 168642, at *1–2 (N.D. Ill. Jan. 24, 2003). But, as in *Aviva Sports*, where Judge Ericksen found that a similar comparative-image survey by Poret was sufficiently relevant to be admitted,[3] "Poret's study was designed only to demonstrate the effect that the product [label] had on consumer decisions. Whether the consumers saw the image in the store or on a website does not affect the relevance [of] Poret's study or conclusions." 829 F. Supp. 2d at 822. If Poret's labeling survey were to be admitted, Tricam could more properly raise the "noticeability" problems it sees with Poret's labeling survey through cross-examination.

---

[3] Tricam describes this argument as pertaining to reliability, *see* Tricam Mem. Supp. Mot. Exclude Poret at 21, but it is perhaps better understood as going to relevance—that is, whether the labeling survey actually gets at the issue a fact finder would need to decide, as opposed to some other issue not related to its fact-finding.

But Poret's testimony nevertheless will be excluded, because it has a more fundamental relevance problem: his surveys did not assess the impact of ANSI conformance specifically.  Instead, his labeling survey tested the importance of ANSI conformance *in combination with* OSHA conformance, and his importance survey referred only to conformance to unspecified "industry safety standards," not specifically to ANSI. Wing has not carried its burden of establishing how either a combined OSHA/ANSI statement or industry safety standards writ large is relevant to the issues a jury would need to decide in this litigation.

1

The issues integral to the resolution of the pending motion to exclude Poret's testimony were heavily foreshadowed by a discovery dispute between the Parties that arose after the close of fact discovery, and which Magistrate Judge Elizabeth Cowan Wright resolved in an extremely thorough order issued on December 4, 2018.  ECF No. 151 (the "Discovery Order").  Therefore, an understanding of the discovery dispute, and Magistrate Judge Wright's ruling on it, is helpful to understanding why Tricam's motion to exclude Poret's testimony will be granted.

As described in more depth by Magistrate Judge Wright in her Discovery Order, this case, since its inception, has centered around allegations that Tricam falsely advertised its ladders as conforming to ANSI A14.2.  *See id.* at 1–4.  The pleadings mentioned OSHA only in passing, if at all.  *Id.* at 4–6.  Neither Wing's complaint in this case nor in a predecessor case identified OSHA-conformance statements—which Tricam also made, in tandem with ANSI-conformance statements—as false.  *Id.* at 5–6.  The only false

statements Wing identified related to Tricam's claims that its ladders conform to ANSI A14.2.  *Id.*

Fact discovery likewise focused on the ANSI-conformance statements.  In response to interrogatories asking Wing to identify with specificity Tricam's allegedly false statements, Wing identified only statements relating to ANSI, not OSHA.  *Id.* at 8–9.  In no way did those written responses suggest that Tricam had made a "collective representation of OSHA/ANSI compliance" or a "collective OSHA/ANSI statement of any kind" that was false.  *Id.* at 9.  Wing's other written discovery responses were similarly devoid of references to OSHA, and although deposition testimony of Wing personnel made a few passing references to OSHA conformance, those witnesses' testimony focused on whether Tricam's statements about ANSI conformance were false.  *Id.* at 9–16.  Such was the state of the evidence when fact discovery closed (with a few limited exceptions not relevant here) on July 31, 2018.  Order to Extend Expert Deadlines [ECF No. 73]; Aug. 29, 2018 Order [ECF No. 96].

The Parties' expert reports were due about two weeks later, on August 17, 2018. Order to Extend Expert Deadlines at 1.  Wing served reports by three experts: Donald Bloswick offered testimony opining on ANSI's requirements and Tricam's alleged failure to meet them, Scott W. Cragun offered testimony as to damages, and Hal Poret offered testimony relating to the materiality of the statements at issue.  With respect to Bloswick's report, Magistrate Judge Wright explained:

> Wing asked Dr. Bloswick to opine on two issues: (1) whether the outer rungs of the Gorilla Ladders at issue "comply with the 2007 version of the ANSI-ASC A14.2" standard and

> (2) "whether the outer rungs of the Gorilla ladder, if they are
> not compliant with A14.2 standard, are of equivalent safety to
> the design prescribed by the A14.2 standard."  Although Dr.
> Bloswick has OSHA experience, Wing did not ask him to
> opine on whether the Gorilla Ladders comply with OSHA
> regulations, nor did Dr. Bloswick offer any opinions on that
> topic.  He did not review any OSHA regulations as part of his
> analysis.

Discovery Order at 17 (internal citations omitted).  With respect to damages, Cragun noted

that Tricam's ladders were promoted as being ANSI-certified and OSHA-compliant, but

he described the allegedly wrongful acts only with respect to ANSI-related statements, not

OSHA-related statements.  *Id.* (citing Expert Report of Scott W. Cragun at 6–7 [ECF

No. 115]).  Finally, Poret's analysis "treated ANSI and OSHA compliance collectively in

his report under the rubric of 'industry safety standards' when conducting his two surveys."

Discovery Order at 17.  Magistrate Judge Wright found that:

> Poret's decision to treat OSHA and ANSI compliance
> collectively was not based on the pleadings, interviews with
> Wing's technical expert Dr. Bloswick, a review of Dr.
> Bloswick's report, or Wing's disclosures, discovery responses,
> or deposition testimony of Wing's witnesses.  Rather, he relied
> on "testimony in this case explaining that compliance with
> ANSI standards is one way to comply with OSHA" and his
> own review of OSHA's website, which Mr. Poret believed
> confirmed "that it requires compliance with ANSI A14.2."

*Id.* at 8 (footnote omitted) (quoting Stensland Decl. Ex. 22 ("Poret Report") at 33 n.7 [ECF

No. 113-16]).  As Magistrate Judge Wright noted, "[n]othing in Mr. Poret's qualifications

indicates he is an expert in engineering, ANSI standards, or OSHA regulations."  *Id.* at 18

n.5 (citation omitted).

14

Approximately one month later, on September 19, 2018, Tricam served its rebuttal expert reports: a rebuttal liability report from consulting engineer Jack Krafchick ("Krafchick Report") [ECF No. 121], and a report from Dr. Debbie Treise, a professor in advertising, in rebuttal to Poret's report [ECF No. 113-1].   Although Krafchick has experience with OSHA's ladder-related regulations, he did not opine whether Tricam's ladders conform to them; rather, his report opined that the ladders conform to ANSI A14.2. Discovery Order at 19 (citing Krafchick Report at 2–3, 7).   His report addressed OSHA in only two ways.   First, he relied on the fact that OSHA regulations permit instances of de minimis noncompliance to argue by analogy that ANSI A14.2 should be liberally construed in a manner that permits Tricam's method of rung construction.   Discovery Order at 19–20 (citing Krafchick Report at 31–34).   Second, Krafchick "summarized the OSHA regulations pertaining to ladders, noting the 'regulations are not entirely consistent with the requirements given in [the] A14.2 standard' and the regulation relied on by Mr. Poret was 'a labeling requirement and says nothing to support an assumption that OSHA regulations and ANSI requirements are interchangeable."   Discovery Order at 20 (citing Krafchick Report at 21 & n.9).

Treise's report contained a number of criticisms of Poret's surveys, including "for 'fail[ing] to isolate the representations about ANSI—as compared to OSHA—in the ANSI Label Statement' and for 'trying to determine the impact on consumer purchase decisions of . . . a combination statement of both OSHA and ANSI' rather than the statement of ANSI compliance or certification."   Discovery Order at 20 (alterations in original) (quoting Triese Report at 8–14).   She also criticized Poret's importance survey for testing the importance

of generally complying with industry safety standards, rather than testing specifically for ANSI compliance.  Discovery Order at 20 (citing Triese Report at 8, 24–25).  As discussed in greater depth below, those criticisms by Treise of Poret's work are essentially the same arguments Tricam makes now in support of its motion to exclude Poret's testimony for lack of relevance.

The criticisms in Treise's report seem to have been the first time Wing had any inkling that the Parties were not on the same page about OSHA's relationship to ANSI A14.2, or to this case.  A week after Tricam served its expert reports and nearly two months after the close of fact discovery, on September 26, 2018, Wing served supplemental responses to two of Tricam's interrogatories, explicitly asserting for the first time that the product label was false "because the MPX ladders do not comply with all aspects of the ANSI A14.2 standard, which is the basis for Tricam asserting that the MPX ladders are ANSI and OSHA compliant."   Discovery Order at 20–21 (quoting supplemental interrogatory responses).  According to Wing, its position "throughout the entire case" had been that not only was the ANSI-conformance statement false, but that because Tricam purported to conform to OSHA by conforming to ANSI A14.2, its OSHA-conformance statements were also false.  Discovery Order at 21 (citation omitted).  "Wing claimed the supplemental responses were 'provided in an abundance of caution based on the unsupported and surprising opinion from Tricam's expert, Dr. Treise, who alleges that Tricam's statements about OSHA compliance via its ANSI compliance are beyond the scope of Wing's false advertising claims.'"  Discovery Order at 21 (quoting supplemental interrogatory responses).

Tricam disagreed, and it moved to strike Wing's untimely supplemental discovery responses.  ECF No. 109.  Magistrate Judge Wright granted Tricam's motion.  Discovery Order at 34–35.  She concluded that "Wing did not disclose its contention that the OSHA certified language on the Gorilla Ladders label and The Home Depot's website was false or misleading or that Wing was contending a 'collective representation of OSHA/ANSI compliance' was false before the July 31, 2018 close of fact discovery." *Id.* at 29.  In view of the importance of the newly disclosed information, the prejudice to Tricam of allowing the supplemental responses to stand, and the inability of alternative relief, such as a continuance, to cure that prejudice, Magistrate Judge Wright determined that the supplemental responses should be struck.  *Id.* at 31–34.  Wing did not appeal that decision.

It is against this backdrop that the Court considers whether Poret's testimony should be excluded.

2

In the labeling survey, respondents viewed a series of images of ladder labels.  Poret Report at 6–11.  In the control group, one of the images respondents viewed included the portion of a product label as it exists on Tricam's product in real life.  *Id.* at 11.  Of particular relevance to this motion is the oval-shaped icon on this label that states, "Manufacturer certifies conformance to OSHA ANSI A14.2 Code for metal ladders."  *Id.* By contrast, in the test group, the entire oval-shaped icon—not just to reference to ANSI A14.2 inside that icon—has been removed from the product-label image.  *Id.* at 13.  Below,

the image shown to the control group is depicted on the left, and the image shown to the test group is on the right:

 

*Id.* at 11, 13.  Tricam argues that, by removing the entire icon rather than just the textual reference to ANSI 14.2 contained within the icon, the labeling survey tests for the materiality of the combined OSHA/ANSI statement, when only the ANSI portion of that statement is at issue in this case.  Tricam Mem. Supp. Mot. Exclude Poret at 16.

Wing argues that Tricam's position is overly formalistic: If Poret is testing a but-for world in which consumers do not see an ANSI-conformance statement on a Tricam product label, then in that but-for world those consumers also would not see any reference to OSHA compliance, because a ladder cannot be OSHA compliant if it does not also conform to Section 6.7.5 of ANSI A14.2.  Wing Mem. Opp'n Mot. Exclude Poret at 9–20 [ECF No. 340].  In other words, Wing argues, if Tricam's ladders do not conform to Section 6.7.5 of

ANSI A14.2, then a truthful product label would need to omit the reference to OSHA as well as the reference to ANSI; omitting only the reference to ANSI but leaving the reference to OSHA would still present consumers with an untrue statement of OSHA conformance.  *See id.*

Probably because the interplay between OSHA and ANSI received no appreciable attention during discovery, Wing has never provided a fulsome description of exactly how, in its opinion, those two regimes fit together.  In its opposition to Tricam's motion to exclude Poret's testimony, Wing asserts that "OSHA incorporates the relevant ANSI standard . . . into OSHA's regulations governing portable metal ladders by reference." *Id.* at 3 (footnote omitted).  In support, it cites two provisions of the Code of Federal Regulations.  *Id.* at 3 n.3.  Both cited provisions are found in a part of the code that apply to general industry.  *See* 29 C.F.R. § 1910.5(a)–(c) (describing application of standards contained in Part 1910).  One, 29 C.F.R. § 1910.6(a)(1), provides that "the mandatory provisions (i.e., provisions containing the word 'shall' or other mandatory language) of standards incorporated by reference are adopted as standards under the Occupational Safety and Health Act," and that such standards "have the same force and effect" whether they are issued by federal agencies or by nongovernmental organizations.  *Id.* (alterations in original).  The other, 29 C.F.R. § 1910.6(e)(8), incorporates by reference "ANSI A14.2-56 Safety Code for Portable Metal Ladders, Supplemented by ANSI A14.2a-77."

Wing does not explain what the suffix "-56" means in the context of § 1910.6(e)(8), or how it differs from whatever supplementation "ANSI A14.2a-77" provides, or for that matter, whether and to what extent any of those requirements overlap with the 2007 version

of ANSI A14.2 the Parties seem to be working from in this case.  *See* Stensland Decl. Ex. 5 ("2007 version of ANSI A14.2") at 1–2 [ECF No. 162-5].  It is important to remember that OSHA is not a single monolithic set of requirements; rather, different OSHA regulations apply to different industry sectors, and several of those different OSHA regulations incorporate by reference different versions of ANSI A14.2.  For example, one regulation that pertains to the construction industry incorporates the 1982 version, *see* 29 C.F.R. Pt. 1926, Subpt. X, App. A; another, pertaining to shipyards, incorporates the 1972 version, *see* 29 C.F.R. §§ 1915.5(d)(1)(ii), 1915.72(a)(4); and others, relating to marine terminals and longshoring, incorporate the 1990 version, *see* 29 C.F.R. §§ 1917.3(b)(2), 1917.119(c), 1918.3(b)(2), 1918.24(g)(2).  It therefore appears that § 1910.6(e)(8)'s reference to ANSI A14.2-56 incorporates the 1956 version of the amendments, and its reference to that version being "[s]upplemented by ANSI A14.2a-77" incorporates by reference certain additional work the ANSI committee did in 1977.  *See* 2007 version of ANSI A14.2 at 4–5 (describing numerous versions of the standard that have existed since it was first adopted in 1923, including different versions approved in 1956, 1972, 1982, 1990, 2000, and 2007, with certain additional work done in 1977).

It presumably would have been fairly easy for Wing to confirm whether or not the version of Section 6.7.5 at issue in this case is identical to any of the analogous provisions in the standards incorporated by reference in OSHA's regulations (or for Tricam to have done so if it had any reason during fact discovery to think that OSHA compliance was at issue here).  The standards incorporated by reference in OSHA regulations "are available for purchase from . . . ANSI" and also may be inspected at OSHA's office in

Washington D.C. or at the National Archives.  29 C.F.R. § 1910.6(a)(4), (e).  But Wing neither provided those documents to the Court nor provided any comprehensible explanation of how it understands the various versions of the ANSI standards to interrelate. Even if the Court were inclined to do that legwork on Wing's behalf, the Court cannot independently verify the extent to which the 1956 version explicitly mentioned in the regulations overlaps, if at all, with the 2007 version before the Court by referencing publicly available sources because the ANSI standards are not reproduced in the Code of Federal Regulations and are instead behind a paywall or available for in-person review in another state.

Wing's failure to explain in its *Daubert* briefing how § 1910.6(e)(8)'s incorporation of an old version of ANSI A14.2 might relate to its claims in this case, which are based on the 2007 version, is made even more perplexing because Magistrate Judge Wright had already flagged the problem for the Parties.  Her Discovery Order notes that "different sections of the OSHA regulations incorporate different versions of ANSI standards" in a way that renders less than clear the question of precisely whether or how the OSHA and ANSI standards interrelate.  Discovery Order at 23 n.7.  In other words, it was not clear to her, and it remains unclear to this Court, why a ladder that does not conform to the 2007 version of ANSI A14.2 would necessarily also violate 29 C.F.R. § 1910.6, which incorporates an analogous standard adopted more than fifty years earlier and which has, in the interim, undergone multiple revisions—revisions that § 1910.6(e)(8) does not seem to have ever adopted.  Certainly Wing—which has the burden of showing Poret's testimony is relevant to the issues in the case—has offered no such explanation.

21

Instead of citing what would seem to be the documents with the potential to prove any equivalence between § 1910.6(e)(8) (and the old version of ANSI A14.2 it incorporates) and the 2007 version of that standard, Wing argues that Poret "properly reached [that] . . . conclusion[]" "[g]iven the evidence in the record." Wing Mem. Opp'n Mot. Exclude Poret at 6. In particular, Wing says, Poret's decision to equate ANSI and OSHA in designing his labeling survey was justified by four pieces of evidence: (1) a particular federal regulation discussed in greater depth below; (2) deposition testimony from a Tricam engineer explaining his understanding of the relationship between OSHA and ANSI; (3) deposition testimony from a Tricam marketing employee about her understanding of the relationship between OSHA and ANSI; and (4) deposition testimony from Tricam's ANSI expert (or, as Wing calls him, "Tricam's OSHA/ANSI expert"), Jack Krafchick, that Wing contends admits that "OSHA regulations require a product to be labeled as ANSI compliant." *Id.* at 4–6. None of that evidence establishes that OSHA regulations incorporate the ANSI requirement at issue here.

As an initial matter, the Court doubts whether it would be appropriate to consider the three pieces of testimonial evidence Wing cites. The question of whether OSHA requires compliance with a particular element of a particular version of ANSI A14.2 is fundamentally one of legal interpretation: how to properly interpret OSHA regulations and the various documents they incorporate by reference. This is the type of interpretation and analysis courts do all the time, and which is appropriately a judicial function, not the province of expert witnesses. Such a "legal conclusion[] [is] for the Court to make. It

[would be] an abuse of discretion to allow the testimony." *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995).

But even if it were appropriate to rely on witness testimony in determining the legal question of whether OSHA regulations in some way incorporate Section 6.7.5 of the 2007 version of ANSI A14.2, the testimony Wing cites does not establish that fact. So far as the Court can tell from the excerpts Wing has filed with the Court, the testimony from Tricam's employees is based on a fairly high-level assumption that in some abstract way OSHA and ANSI are interchangeable. *See, e.g.*, Simpson Dep. at 86 [ECF No. 294]; Mansager Dep. at 91–92 [ECF No. 276]. Neither of those witnesses discussed the various versions of the ANSI standard incorporated in various regulations that apply to different types of workplaces, and neither grappled with which of those ANSI versions a ladder must conform to in order to also conform to OSHA.

Krafchick's deposition testimony is more specific but ultimately no more instructive. He did testify that, because it is foreseeable that a portable metal ladder would be used in a variety of industries—construction, or general industry, or longshoring, or marine terminals—his opinion as a consultant is that such a ladder should comply with the OSHA regulations applicable to all of those industries if it is marketed as conforming to OSHA. Krafchick Dep. at 172–74 [ECF No. 316]. But that does not help Wing for two reasons. First, Krafchick's opinion is not tied to any provision of OSHA; it seems to simply reflect his understanding of the best practice within the ladder industry, which does not itself have the force of law. Second, it is not at all clear exactly how it would work for a single product to comply with four or more different iterations of the same standard, or

even whether it would be possible.  Krafchick himself touched on that problem, testifying that:

> As we know, OSHA requires some of the metal ladders to comply with older versions of the standard.  It's wholly unrealistic for a manufacturer to go back and check its ladders against older standards when the industry and the standards-making body has gone forward to '07 to jump back to '90 or earlier to see if the ladder is compliant with [an] older version of the standard.  It makes no sense but it's what we have.

Krafchick Dep. at 193.  The issue on this motion, though, is not whether it is feasible for manufacturers to juggle different versions of the same standard; it is whether a ladder that allegedly does not conform to the current version may, at least in theory, nonetheless conform to an earlier version and thereby comply with OSHA regulations explicitly incorporating that earlier version.

Krafchick's testimony does not say.  He does not appear to have reviewed any version of ANSI A14.2 issued prior to the 1990 version—nor would he have had any reason to do so, given the state of fact and expert disclosures at the time he issued his expert report.  Krafchick Dep. at 112, 177:21–23.  Consequently, although he testified that the 1990 version incorporated the same one-inch rung-depth requirement that is at issue in this case, he does not know whether earlier versions of the standard also incorporated that requirement.  *E.g.*, *id.*  at 177.  It may be that such a ladder would conform with OSHA regulations pertaining to construction, or shipyards, or general industry, which all incorporate older versions of the standard.  If that is the case, then it is not at all clear

whether labeling such a ladder as conforming to OSHA would be false *as a matter of law*, Krafchick's advice about the best practice within the industry notwithstanding.

Wing's reliance on 29 C.F.R. § 1917.119(c) is unavailing for a similar reason.  That regulation applies to portable ladders used in marine terminals and provides that such ladders, if manufactured after January 21, 1998, must "bear identification indicating that they meet the appropriate ladder construction requirements" of "ANSI A14.2-1990, Safety Requirements for Portable Metal Ladders."  *Id*.  Even if a ladder cannot accurately be labeled as meeting the 1990 version of ANSI A14.2, there is no evidence suggesting that it necessarily could not meet an older version of ANSI A14.2, and thereby conform to one or more of the other OSHA regulations that apply to a different industry sector and incorporate the older ANSI standard.

The lack of clarity in Wing's briefing and the lack of consistency in the various OSHA regulations underscore two additional reasons to exclude Poret's testimony regarding his labeling survey.  First, although Wing insists that its "false advertising claims are not based on whether or not the reference to OSHA compliance itself is false," Wing Mem. Opp'n Mot. Exclude Poret at 4 n.5, that is precisely the basis on which Poret's labeling survey conflated the label's OSHA and ANSI statements: if the ANSI statement is false, he reasons, then the OSHA statement must also be false, and therefore both statements must go.  *See e.g.*, Third Miller Decl. Ex. 86, Poret Responses to Treise for Deposition Testimony at 1–2 [ECF No. 343 at 22] ("The entire statement on the label stands or falls collectively based on Tricam's compliance or non-compliance with ANSI").  Wing has not suggested, and the Court has difficulty imagining, how a jury might be

instructed that, although Wing is not arguing that the OSHA-conformance statement is false, its survey evidence is premised on the conclusion that the OSHA-conformance statement is false. Second, Tricam's lack of opportunity to take meaningful discovery on the interplay between ANSI and OSHA highlights the prejudice that would result to Tricam from admitting Poret's testimony on his labeling survey—which assumes a degree of equivalence between the two. These considerations of jury confusion and prejudice to Tricam constitute additional grounds for excluding the testimony.

In sum, Wing—the Party with the burden of showing how Poret's testimony is relevant—has not cited, and the Court has not independently identified, any evidence establishing that a ladder that does not satisfy the rung-depth requirement at issue here necessarily fails to conform to OSHA. The assumption that ANSI is equivalent to OSHA, however, is baked into Poret's labeling survey. Consequently, the Court cannot conclude that the findings of the labeling survey are relevant to the issues in this litigation, and testimony regarding that survey must therefore be excluded.

3

Poret's importance survey suffers from a similar problem. Respondents to that survey were not specifically asked about the importance of ANSI conformance to their purchasing decisions. Instead, they were asked rank the importance of a number of potentially relevant considerations, including "[c]ompliance with industry safety standards" in general. Poret Report at 14–16. Poret found that industry safety standards were important to a total of 58% of respondents, and he concluded that this result "further confirms that compliance with industry safety standards is the type of issue that is

important to consumers and would tend to impact purchase decisions." *Id.* at 18. Wing points to survey evidence generated by one of Tricam's experts as well as contextual clues on Tricam's label that suggest consumers understand ANSI to be an industry safety standard—or at least that they would understand that to be the case from the context on Tricam's label itself. *See* Wing Mem. Opp'n Mot. Exclude Poret at 24–25. Even assuming that to be true, the importance survey is not relevant to the question of whether the ANSI-conformance statement that is at issue in this case is material to consumers' purchasing decisions.

As must be clear by now, there are multiple sources of industry safety standards, and at least in theory it is possible to meet some of them but not others. What happens if, as contemplated above, a ladder that fails to conform to the 2007 version of ANSI nonetheless does meet the requirements of one or more OSHA regulations that incorporate an older version of that standard? *That* is the relevant question for this case, given Wing's failure to show equivalence between the ladder-related OSHA regulations and the current version of ANSI A14.2. Knowing that industry safety standards in general are important to consumers' purchasing decisions does nothing to predict whether consumers might be dissuaded from buying a ladder that does not meet current ANSI standards but is technically compliant with one or more OSHA regulations. To answer that question, Poret would have needed to ask about ANSI specifically. Because he did not do so, the findings of his importance survey are not relevant to the key question in this case, and testimony relating to that survey therefore will be excluded.

III[4]

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor."  *Id.* at 255 (citation omitted).

As noted above, a plaintiff can prevail on a Lanham Act claim only by showing a false statement by the defendant which is deceptive and material, and which the defendant caused to enter interstate commerce, resulting in injury to the plaintiff.  *United Indus.*, 140 F.3d at 1180 (citations omitted).  With the exception of the fourth requirement—that Tricam caused the allegedly false statement to enter interstate commerce, which no one contests—Tricam argues that no triable fact exists as to any of the elements of Wing's false-advertising claim.  Tricam Mem. Supp. Summ. J. at 22–40 [ECF No. 160].

A number of the Parties' disputes relating to the summary-judgment motion would require the Court to consider novel or substantially unsettled legal issues, including: (1) whether statements provided by a supplier to a retailer and published on the retailer's

---

[4]      In describing the relevant facts and resolving this motion under Rule 56(a), all of Wing's evidence is believed, and all justifiable inferences are drawn in its favor. *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam).

website might constitute a statement "by" the supplier; (2) whether a dispute over the literal falsity of a statement presents a question of law or one of fact; (3) whether, in a non-comparative case, a presumption of deception survives the Eighth Circuit's decision in *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755 (8th Cir. 2005); and (4) whether Wing has met whatever unknown standard now applies to the remedy of disgorgement following the Eighth Circuit's decision in *Martinizing International, LLC v. BC Cleaners, LLC*, 855 F.3d 847 (8th Cir. 2017). But there is no need to analyze those issues because in this case, one element—materiality—is dispositive.

The materiality element of a false-advertising claim requires that "the deception is . . . likely to influence the purchasing decision. *United Indus.*, 140 F.3d at 1180. The *Daubert* motion on Poret's testimony, described above, is largely a proxy fight over materiality. Because that testimony will be excluded, Wing can survive summary judgment only by pointing to other evidence showing that the allegedly false statements are material. It cannot do so.

Wing's contention that, even without Poret's testimony, it can show materiality is based largely on a body of case law holding that "[o]ne method of establishing materiality involves showing that the false or misleading statement relates to an 'inherent quality or characteristic' of the product," *Cashmere & Camel Hair Mrfs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311–12 (1st Cir. 2002) (footnote omitted) (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997), and that "questions of safety and efficacy are likely to satisfy automatically the materiality prong," *Midlothian Labs., L.L.C. v. Pamlab, L.L.C.*, 509 F. Supp. 2d 1065, 1082 (M.D. Ala. 2007), *vacated in part on other*

*grounds*, 509 F. Supp. 2d 1095 (M.D. Ala. 2007). *See* Wing Mem. Opp'n Summ. J. at 43–44. But those cases are almost entirely from outside the Eighth Circuit; Tricam points out that the Eighth Circuit has not endorsed the "inherent quality or characteristic" method of showing materiality. *See* Tricam Summ. J. Reply Mem. at 7 [ECF No. 353]. Furthermore, as described above, because Wing has not demonstrated that the 2007 version of ANSI A14.2 and the various OSHA regulations are equivalent—that is, that the alleged failure to conform to the 2007 standard necessarily renders both the ANSI-conformance statement and the OSHA-conformance statement false—the most Wing could show is a technical noncompliance with one of multiple potentially applicable safety standards. That is not a compelling context in which to adopt a new approach to showing materiality.

Wing points to other evidence that it says demonstrates materiality: (1) testimony from a high-level Wing executive, Newell Ryan Moss, that, in his opinion, compliance statements on Home Depot's website are "important, otherwise, I don't believe Home Depot would put it on the website," Moss Dep. at 166 [ECF No. 267]; (2) testimony by Tricam's president that an ANSI-certification statement on Home Depot's website "could be" helpful in differentiating Tricam's products from hypothetical competing ladders that do not purport to conform to ANSI, Skubic Dep. at 85–86 [ECF No. 268], and suggesting that an ANSI-certification statement on the product label might be something a professional might want for purposes of OSHA inspections of a job site, *id.* at 278–79; and (3) testimony from the chairman of the ANSI labeling committee that "[i]t's possible" that an ANSI-compliance statement would help a consumer choose a ladder, Ver Halen Dep. at 26–27 [ECF No. 317]. But these statements are all speculative on their face. Moss's

statement is based solely on his own opinion and at several points appears to relate to a combined OSHA/ANSI statement rather than the ANSI statements at issue here; he also testified that he had never asked any consumers whether they found Tricam's statements misleading and that he "wouldn't know who has."  Moss Dep. at 163–64.  Tricam's president also testified, "How important those things are I don't know.  They may be important to some people.  They may not be important to other people.  Our research that we've done . . . had virtually no mention of ANSI whatsoever.  So I think—nor did we ask any specific questions, which I think indicates how important we think it is to the end consumer."  Skubic Dep. at 280–81.  And, the chair of ANSI's labeling committee also testified that he does not know why compliance with the ANSI standard requires including a statement to that effect on the product label, but that "[i]n [his] opinion, it would represent to some consumers that it is a relatively safe product or reasonably safe."  Ver Halen Dep. at 26.  That opinion, too, appears to be entirely speculative.  *See id.* at 26–27.

Because Wing can point to no evidence showing that the ANSI-conformance statements at issue in this case are material to consumers' purchasing decisions, Tricam is entitled to summary judgment on Wing's claims under the Lanham Act and the Minnesota Deceptive Trade Practices Act.

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Defendant's motion to exclude the expert testimony of Donald S. Bloswick [ECF No. 220] is **DENIED**;

2. Defendant's motion to exclude the expert testimony of Hal Poret [ECF No. 224] is **GRANTED**;

3. Defendant's motion for summary judgment [ECF No. 159] is **GRANTED**; and

4. This case is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 9, 2019                          s/ Eric C. Tostrud
                                              Eric C. Tostrud
                                              United States District Court