UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Wing Enterprises, Inc., d/b/a Little Giant
Ladder Systems, a Utah corporation,

      Plaintiff,

v.

Tricam Industries, Inc., a Minnesota
corporation,

      Defendant.

Case No. 17-cv-1769 (ECT/ECW)

**OPINION AND ORDER**

---

Mark A. Miller, Brett L. Foster, and Elliot James Hales, Dorsey & Whitney LLP, Salt Lake City, UT, and Clint Conner and Caitlin L. D. Hull, Dorsey & Whitney LLP, Minneapolis, MN, for Plaintiff Wing Enterprises, Inc.

Eric H. Chadwick, Patterson Thuente Christensen Pedersen, PA, Minneapolis, MN, for Defendant Tricam Industries, Inc.

---

On July 9, 2019, the Court granted Defendant Tricam Industries' summary-judgment motion on Plaintiff Wing Enterprises' state and federal false-advertising claims. *See* SJ Order, *Wing Enters., Inc. v. Tricam Indus., Inc.*, No. 17-cv-1769 (ECT/ECW), 2019 WL 2994465 (D. Minn. July 9, 2019) ("SJ Order") [ECF No. 370]. Judgment was entered in this matter the following day. ECF No. 371. Tricam then moved for an award of attorneys' fees and nontaxable costs [ECF No. 372], and Wing moved to stay resolution of that motion [ECF No. 375] until its appeal, which is now pending in the Federal Circuit [ECF No. 405], is resolved. While those motions were pending, Tricam filed a bill of costs, as contemplated by Local Rule 54.3, seeking a total of $31,727.44 in costs. ECF No. 404.

Wing objected to that bill of costs in certain limited respects. ECF No. 413. The Clerk entered a cost judgment in Tricam's favor, but in a lesser amount than Tricam had requested [ECF No. 417], and Tricam moved for a review of that cost judgment [ECF No. 419]. The Parties' disputes on Tricam's fee motion, its motion to review the cost judgment, and Wing's motion to stay have now been fully briefed. For the reasons described below, Wing's motion to stay will be denied, Tricam's motion for attorneys' fees will be denied, its motion to review the cost judgment will be granted, and it will be awarded the additional $3,416.24 it now seeks in costs.

I

Wing's motion to stay resolution of the motion for attorneys' fees pending resolution of its appeal will be denied because it is more efficient "to address the issue now with the underlying facts and circumstances of this litigation freshly in mind, rather than deferring consideration for" a year or more while this case awaits a decision on appeal. *Upsher-Smith Labs., Inc. v. Pan American Labs., Inc.*, No. Civ.01-352 ADM/AJB, 2004 WL 902176, *3 (D. Minn. Apr. 26, 2004) (citing D. Minn. LR 54.3(b) and Comments thereto). As Wing itself notes, deciding the motion now further serves the goal of efficiency because, for the reasons discussed below, the Court will deny the fee motion, and to the extent Tricam might wish to argue that denial constitutes an abuse of discretion, it will be able to do so in connection with the pending appeal rather than through some separate process in the distant future. *See* Wing Fee Br. at 5–6 [ECF No. 398].

II

The standard for awarding a prevailing defendant attorneys' fees under either the Lanham Act or under Minn. Stat. § 325D.45, subd. 2, is that such an award is appropriate "only . . . in exceptional cases." *B&B Hardware, Inc., v. Hargis Indus., Inc.*, 912 F.3d 445, 454 (8th Cir. 2018) (citing 15 U.S.C. § 1117(a)); Minn. Stat. § 325D.45, subd. 2 (attorneys' fees permitted in false-advertising case "if . . . the party complaining of a deceptive trade practice has brought an action knowing it to be groundless"); *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 711 F. Supp. 2d 991, 1010 (D. Minn. 2010) (denying motion for attorneys' fees). "An exceptional case is one in which a plaintiff brought an action that 'was groundless, unreasonable, vexatious, or was pursued in bad faith.'" *B&B*, 912 F.3d at 454 (quoting *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 123 (8th Cir. 1987)). "Where the defendant is the prevailing party, the standard is not whether the claimant filed suit in good faith but rather whether plaintiff's action was oppressive." *Mt. Mktg. Grp., LLC v. Heimerl & Lammers, LLC*, No. 14-cv-846 (SRN/BRT), 2016 WL 2901735, at *2 (quotation omitted).

Having carefully reviewed a stack of double-sided summary-judgment and *Daubert* submissions more than two feet thick, the Court can say with a rare degree of confidence that this is not an exceptional case within the meaning of the Lanham Act. The Court awarded Tricam summary judgment on a very narrow basis: after the Court ruled that the expert testimony of one of Wing's experts, Hal Poret, must be excluded, Wing did not have evidence sufficient to create a genuine issue of material fact as to whether the ANSI-conformance statement (as distinct from the OSHA-conformance statement) on its ladders

3

was material to consumers' purchasing decisions. *See generally* SJ Order, 2019 WL 2994465, at *5–13. The *Daubert* motion itself presented the Court with a complicated question, and if the circumstances were slightly different—for example, if the Parties' differing understandings about whether the OSHA-conformance statements on the ladder necessarily depended on the ANSI-conformance statements on the ladder had crystalized and been presented to the Court a bit earlier in the litigation, *see generally* Discovery Order, *Wing Enters., Inc. v. Tricam Indus., Inc.*, No. 17-cv-1769 (ECT/ECW), 2018 WL 6326416 (D. Minn. Dec. 4, 2018) [ECF No. 151] (granting Tricam's motion to strike Wing's interrogatory responses as untimely)—the admissibility of Poret's testimony would have presented a much closer call. Had that testimony come in, it would have created a triable issue of fact as to the materiality element of Wing's claims. Moreover, in the same order excluding Poret's expert testimony, the Court ruled that the expert testimony of another expert, Donald Bloswick, was admissible. SJ Order, 2019 WL 2994465, at *3–4. That testimony created a triable fact as to the literal falsity of Tricam's ANSI-conformance statements. And, as the Court has already observed, analyzing the other elements of Wing's false-advertising claims in the context of the summary-judgment motion:

> would [have] require[d] the Court to consider novel or substantially unsettled legal issues, including: (1) whether statements provided by a supplier to a retailer and published on the retailer's website might constitute a statement "by" the supplier; (2) whether a dispute over the literal falsity of a statement presents a question of law or one of fact; (3) whether, in a non-comparative case, a presumption of deception survives the Eighth Circuit's decision in *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755 (8th Cir. 2005); and (4) whether Wing has met whatever unknown standard now applies to the remedy of disgorgement following the

4

> Eighth Circuit's decision in *Martinizing International, LLC v. BC Cleaners, LLC*, 855 F.3d 847 (8th Cir. 2017).

SJ Order, 2019 WL 2994465, at *12. The Court will not speculate which Party might have come out on top with respect to any of those issues, but the mere existence—and sheer number—of such "novel or substantially unsettled legal issues," *id.*, makes it impossible for the Court to conclude that Wing's claims were "groundless, unreasonable, vexatious, or [ . . .] pursued in bad faith," such that an award of attorneys' fees might be warranted. *B&B*, 912 F.3d at 454 (quoting *Hartman*, 833 F.2d at 123).

### III

Tricam timely filed a bill of costs claiming a total of $31,727.44 in taxable costs, of which the Clerk awarded $15,870.20. ECF Nos. 404 at 1, 417. The costs Tricam sought for transcripts and disbursements for printing were awarded in their entirety. ECF No. 417. It was awarded $160.00 of the $248.40 it sought for witnesses, and was awarded nothing for the $15,768.84 it claimed for certain copying fees relating to e-discovery. *Id.* The Clerk explained that Tricam had not provided sufficient explanation and documentation of its witnesses' mileage costs, and further found that "[e]lectronic discovery costs are not taxable by the Clerk." ECF No. 417-1.

As the Parties briefed Tricam's subsequent motion to review the cost judgment, the issues narrowed. Tricam's motion seeks the $88.40 the Clerk denied in witness costs relating to mileage, and $3,327.84 of the larger amount Tricam previously claimed as copying fees. Cost Judgment Mot. at 1 [ECF No. 420]; Mem. in Supp. of Cost Judgment Mot. at 4 [ECF No. 422]. Wing does not oppose Tricam's motion insofar as it seeks an

5

additional $88.40 for witness-mileage costs, and Tricam will be awarded that amount. *See* Mem. in Opp'n to Cost Judgment Mot. at 4 [ECF No. 425]. But Wing argues that the e-discovery expenditures Tricam seeks are not taxable because they were done for the mutual convenience of the Parties, not pursuant to any court order or agreement. *Id.* at 1–2. The Clerk's order denying the costs at issue is reviewed de novo, and any appeal of this Court's determination will be reviewed for an abuse of discretion. *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 233 (1964); *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 695 (8th Cir. 2001).

Federal Rule of Civil Procedure 54 provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The Eighth Circuit has interpreted that rule to mean that "[a] prevailing party is presumptively entitled to recover all of its costs." *In re Derailment Cases*, 417 F.3d 840, 844 (8th Cir. 2005). But in determining which costs to award, "federal courts are bound by the limitations set out in [28 U.S.C. §] 1920." *Brisco-Wade v. Carnahan*, 297 F.3d 781, 782 (8th Cir. 2002). That statute itemizes several types of expenditures a judge or clerk of court may tax as costs; relevant here is the provision in § 1920(4) that "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" are recoverable. 28 U.S.C. § 1920(4). "The prevailing party has the burden of demonstrating the amount of its recoverable costs." *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 969 (N.D. Ill. 2010) (quotation omitted); *see also Pehr v. Rubbermaid, Inc.*, 196 F.R.D. 404, 408 (D. Kan. 2000); *cf. Fogleman v. ARAMCO*

*(Arabian Am. Oil Co.)*, 920 F.2d 278, 286 (5th Cir. 1991) ("While we certainly do not expect a prevailing party to identify every xerox copy made for use in the course of legal proceedings, we do require some demonstration that reproduction costs necessarily result from that litigation."). Indeed:

> the burden of proof is not a mere formality. Rather, the burden of proof gives teeth to the requirement that before a prevailing party may require its adversary to pay costs, the prevailing party must prove with evidence and not merely with *ipse dixit* statements—that the costs were actually incurred, were reasonable in amount, and were necessary. Where there is a failure of proof, the party who has failed to carry its burden bears the consequences.

*Trading Techs.*, 750 F. Supp. at 969.

Tricam contends that the $1,646.04 it spent to produce thousands of documents as single-page TIFFs,[1] and the $1,681.80 it spent to produce those documents with Optical Character Recognition ("OCR"),[2] fall within the ambit of § 1920(4)'s exemplification and copying costs. *See* Mem. in Supp. of Cost Judgment Mot. at 3–4; Chadwick Decl. ¶¶ 5–6 [ECF No. 423]. Wing does not seem to dispute that, if Tricam had undertaken that work

---

[1] TIFF is a "widely used and supported graphic file format for storing bit-mapped images, with many different compression formats and resolutions. TIFF images are stored in tagged fields, and programs use the tags to accept or ignore fields, depending on the application." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 161 n.2 (3d Cir. 2012) (internal quotations, citations, and alterations omitted).

[2] OCR is "a technology process that translates and converts printed matter on an image into a format that a computer can manipulate and, therefore, renders that matter text searchable." *Race Tires Am.*, 674 F.3d at 162 n.6 (quoting The Sedona Conference, *The Sedona Conference Glossary: E-Discovery & Digital Information Management* 37 (Sherry B. Harris et al. eds., 3rd ed. 2010) (alteration omitted)).

pursuant to a court-ordered ESI protocol, or even an informal but explicit agreement of the Parties, those expenses would be taxable;[3] instead, Wing argues that in the absence of such a formal or informal requirement, the additional costs of producing copies as TIFFs with OCR were incurred merely for the convenience of counsel, and do not represent the cost of "making copies [that] are necessarily obtained for use in the case." 28 U.S.C. § 1920(4); Mem. in Opp'n to Cost Judgment Mot. at 1–2; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 925, 927–28, 931–32 (9th Cir. 2015).

A threshold question, then, is whether the Parties agreed to produce single-page TIFFs with OCR. Although, as part of the Rule 26(f) conference, the Parties "discussed issues about disclosure or discovery of electronically stored information . . ., including the form or forms in which it should be produced," they did not submit any proposed ESI plan, Rule 26(f) Report at 13 [ECF No. 17], and the Court did not include any particular ESI requirements—much less any requirement that the Parties use TIFFs or OCR in their productions—in its pretrial scheduling order. Pretrial Scheduling Order at 13 [ECF No. 23]. Tricam's counsel, Eric Chadwick, asserts in a declaration that as part of the Parties' Rule 26(f) conference, he personally conferred with Wing's counsel and the two sides "reached an agreement that both Wing and Tricam's documents would be produced

---

[3] For example, Wing has not argued that "the OCR process is 'not itself the making of copies' but is about 'making post-copying review more efficient.'" *See United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 291 F. Supp. 3d 1345, 1352 (N.D. Ga. Nov. 28, 2017) (holding that OCR costs were not recoverable under § 1920(4) and quoting *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1332 (Fed. Cir. 2013)). The Court therefore assumes without deciding that OCR-related costs may, under certain circumstances, be taxed as copying costs under § 1920(4).

as single-page TIFFs with [OCR]," but that they did not believe they needed to "include the informal agreement in the 26(f) report or an ESI Protocol." Chadwick Decl. ¶ 3. In Chadwick's recollection, he and Wing further "discussed the need for keyword searching as part of an ESI Protocol" but neither "believed the case would be e-mail intensive" and therefore "agreed to defer further discussions on th[e] matter and to discuss them at a later date if a problem arose," but none did. *Id.*

These conversations apparently were not well-papered; the only contemporaneous documents submitted in connection with this motion are ambiguous. Two days before the Rule 26(f) report was filed, Wing's counsel Mark Miller emailed Tricam's team that "[a]s far as an ESI order, given our last conversations, I am not sure we will really need one. I am open to considering one, but I modified the Report to simply state that we discussed it and will propose one if it turns out we deem it necessary." Miller Decl. Ex. A [ECF No. 426-1]. The next day, one member of Tricam's legal team (copying Chadwick) emailed Miller that Tricam "agree[d] that the parties can work out an ESI order as needed." *Id.* at Ex. B [ECF No. 426-2].

Wing disagrees that the Parties' Rule 26(f) discussions included any "agreement" regarding TIFF or OCR. Miller Decl. ¶ 2–3 [ECF No. 426]. Miller recalls that in the Parties' conversations, "Tricam's legal team indicated they preferred producing documents as single-page TIFF's having [OCR]," and that because the Parties' individual preferences were "aligned with" one another and "mutually convenient," the two "concluded a formal ESI agreement or order was unnecessary." *Id.* ¶ 3. Thus, Wing says, the Parties held open the possibility of "further evaluat[ing]" the type of subjects that ordinarily would be

addressed in an ESI Protocol precisely because their understanding of how each would prefer to produce documents, though "mutually convenient," did not impose any obligation on the other side. *Id.* ¶¶ 3–4.

Most cases discussing whether the costs of producing searchable TIFFs are covered by § 1920(4) have done so in situations where the production format of e-discovery was specifically addressed either under a court-ordered ESI protocol or some explicit agreement between the parties. But in *CBT Flint Partners, LLC v. Return Path, Inc.*, the Federal Circuit (applying the law of the Eleventh Circuit, the regional circuit in the case) discussed the possibility that such e-discovery costs might be covered by § 1920(4) even where no such order or agreement existed, and the considerations that might reasonably be applied in determining whether to tax such costs:

> [I]f a party from whom documents are sought is subject to no particular requirements governing the format or other characteristics of the produced documents, it might suffice for the producing party to copy the requested documents directly from the source media to the production media and deliver the production media directly to the requester. In that event, only the costs of that simpler process will be chargeable under section 1920(4). Of course, proceeding in that way might, for both producer and requester alike, significantly complicate other needed aspects of the litigation process, such as document review. A requester may therefore decide to request a production in a form that increases copying costs while saving other litigation costs.[4] But if not, the costs are limited to the duplication needed for the production in the form required. At the same time, the producing party might choose, for the efficiency of its own litigation work, to image source drives and upload the images to a document database for faster

---

⁴ The record presented on this motion is silent as to whether any of Wing's Rule 34 requests to Tricam requested that Tricam produce responsive ESI in a particular format, such as searchable TIFFs.

10

> filtering, searching, and review. That choice, however, would not change the costs chargeable to the requester as part of the costs of making copies under section 1920(4).
>
> How this analysis applies in full to the specific bills of costs in this case requires an inquiry that the district court should perform in the first instance. **The court should determine what requirements governing the format or other characteristics of the produced documents were imposed on the defendants. At least in this case, looking back to events some years ago, the court may have to resort to a determination of well-grounded expectations about default requirements in the absence of contrary agreements, rules, or orders.** In the future, default standards should become clearer, and pre-copying court orders or parties' agreements should determine more affirmatively and definitively what form of copying is required in a particular case.

737 F.3d 1320, 1330 (Fed. Cir. 2013) (emphasis added).

In the absence of any binding authority on this point from the Eighth Circuit, the principles articulated in *CBT* make good sense. Because the Parties failed to "affirmatively and definitively" articulate the form or forms that copies of ESI should take in this case, the Court must retrospectively "resort to a determination of well-grounded expectations about default requirements in the absence of contrary agreements, rules, or orders." *Id.* Of course, it is difficult to conclusively determine what unspoken expectations any two parties might have held more than two years ago, when their litigation was in a very different posture. That is one reason why Rule 26(f) requires that early in the litigation process, the parties "develop a proposed discovery plan" which must, among other things, "state the parties' views and proposals on . . . any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced." Fed. R. Civ. P. 26(f)(2), (f)(3)(C). Because here, the parties did not reduce to

11

writing the proposed discovery plan required by Rule 26(f), the best evidence available to the Court as it must now forensically reconstruct the contents of that proposed discovery plan is a small, ambiguous body of documentary evidence and the Parties' own statements about why they did what they did. But based on the best evidence now available, it seems more than fair to conclude that at the time the Parties decided not to seek an ESI order, they shared an understanding that, as a default, their documents would be produced in searchable TIFFs. Even in Wing's telling, the decision not to pursue an order from the Court requiring a particular form of production was predicated at least in part on the well-grounded understanding that each Party would be producing single-page TIFFs with OCR. Miller Decl. ¶ 3 ("*Because* Tricam's preference was aligned with" Wing's, and "*because* each [Party's] preferred document production method was mutually convenient," the Parties determined that no formal ESI agreement or Court order was necessary (emphasis added)).

Accordingly, because the Parties agreed they would each produce their ESI as searchable TIFFS, and because their decision not to seek entry of a formal ESI order was predicated, at least in part, on that agreement about that production format, the $1,646.04 Tricam incurred to produce its documents as single-page TIFFs and the $1,681.80 it incurred to produce its documents with OCR will be taxed pursuant to § 1920(4) as "the costs of making copies . . . where the copies are necessarily obtained for use in the case."

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Plaintiff's motion to stay [ECF No. 375] is **DENIED**;

2. Defendant's motion for attorneys' fees and nontaxable costs [ECF No. 372] is **DENIED**;

3. Defendant's motion to review the cost judgment in this matter [ECF No. 420] is **GRANTED**; and

4. In addition to the costs previously taxed in this case, an additional $3,416.24 in costs is taxed against Plaintiff.

**SO ORDERED.**

Dated: November 6, 2019	s/ Eric C. Tostrud
	Eric C. Tostrud
	United States District Court